Day, J.
 

 The amended petition filed herein recites :
 

 “Plaintiff further says that for some time prior to November 15, 1923, the defendant maintained, at the intersection of said tracks and the Chicago pike, a target or signal consisting of an automatic bell and swinging electric light, which bell and electric light sounded and swung when the defendant’s tracks were occupied by locomotives or cars, but that on the 15th day of November, 1923, said target or signal was defective and not in operation, although unknown to plaintiff and though required to be in good working order by the Public Utilities Commission of the state of Ohio.
 

 “Plaintiff further says that about 4 a. m., on November 15, 1923, plaintiff was operating plaintiff’s 1923 Ford sedan automobile in a westerly direction on said pike, in a careful and proper manner, at approximately 15 miles per hour, and was keeping a proper lookout and driving cautiously, and then slowed down to from 5 to 8 miles per hour when about 250 feet from defendant’s tracks and proceeded cautiously; that there was a dense fog over said pike and railroad tracks at said time.
 

 “Plaintiff further says that plaintiff in operating said automobile and when approaching said crossing maintained a careful lookout and listened to hear any warning signal or notice that said tracks were occupied by an engine or train of cars, and also looked to see if the target or signal at said crossing was operating, and, upon hearing no
 
 *565
 
 noise and not seeing said target or signal sounding and swinging to notify the public that said tracks were occupied by an engine or cars, proceeded to cross said railroad tracks and in so doing collided with the cars of the defendant company on said tracks. * * *
 

 “Plaintiff further says that because of the dense fog aforesaid said crossing was obstructed by two white refrigerator cars of the defendant, and the engineer or other person in charge of defendant’s train of cars and engine crossing said Chicago pike, which is a turnpike, failed to sound any signal or warning by bell or whistle and in no wise notified plaintiff of the approach or occupa,ney of said crossing by defendant’s engine and cars.
 

 “Plaintiff further says that with the lookout and careful operation of said automobile by plaintiff, plaintiff would have heard said whistle or bell or seen said electric light swinging had said whistle or bell been sounded or said light been in operation, and that because of the failure of the defendant to sound said whistle or bell and cause said electric light to show and swing, plaintiff was not notified that said crossing was occupied by defendant’s engine and cars, and because of the lack of such notice said collision occurred.”
 

 The answer of the defendant company, after having made certain admissions, was, first, in the nature of a general denial; and for a second defense the defendant averred that at the time of the collision it was in every way exercising proper care, “that it was moving its train slowly over this crossing, and that the accident was contributed to and caused by the carelessness and negligence of
 
 *566
 
 plaintiff in failing to exercise his senses of sight and hearing in approaching said crossing to see whether or not a train was moving thereover, and in failing to approach said crossing at a safe and reasonable rate of speed, and that if the said plaintiff had exercised care in the driving of his automobile, and had approached said crossing with reasonable speed and at such speed as would enable him to stop within the range of his vision, the accident would never have happened.”
 

 No reply was filed to the answer, and upon the issues as thus made by the pleadings the parties went to trial. In the opening statement to the jury of what the plaintiff expected to show by the evidence, counsel for the plaintiff said:
 

 “They drove along at a moderate rate of speed, and got outside of the city limits and got nearly to the terminal crossing and slowed down to a very slow rate of speed, and there was a fog in the air and it was very hard to distinguish objects ahead, and there was standing on the crossing of the Chicago Pike a train on the Terminal Railroad Company’s tracks, and without any warning and without any lights or any means of notifying travelers that the train was blocking the crossing.
 

 “When Mr. Hughes got almost up to the train he discovered it; he swung his wheels to the left, and the rear end of his car swung around and caught between two freight cars. The train then started and dragged him off the road into the ditch * * *.
 

 “We expect the evidence to show that this train was stationary at the time, that it had a train crew
 
 *567
 
 aboard, and that they used no efforts whatever to notify travelers on the road through lights or blasts of the whistle or signals of any kind that the road was blocked.
 

 “Further than that, we expect the evidence to show that they had a target — that is, a contrivance on a pole that when a train gets within a certain distance of the crossing it swings and a light flashes and a bell rings — that that had been operating for some time previous to this collision, and we expect to show by the evidence that it was not in operation at this time, and that by reason of that not being in operation Mr. Hughes was unable to tell just the exact location, or in fact tell at all that the road was blocked and that there was a train on the track at that particular point.”
 

 At the conclusion of this statement, there was a motion for a directed verdict, which the trial court sustained, for which ruling the Court of Appeals reversed.
 

 This state of the record requires the solution of the proposition involved in the following question: Does the admission by the plaintiff that he knew of the location of a certain railroad. crossing and of the existence of a heavy fog in the air which made it impossible to see more than a few feet ahead, together with the admission that he drove his automobile at night into the side of a freight train, constitute such negligence as would bar his recovery in an action against the railroad company for negligence in allowing its train to block such crossing without warnings by bell or light?
 

 The rule as to the duty of a traveler upon the
 
 *568
 
 highway, approaching a grade crossing at a steam railroad, has often been stated by this court, and,' at the expense of repetition, it is that the traveler must look and listen for the approach of trains before crossing, and, furthermore, that he must look and listen at a place and in a manner that will make the looking and listening effective.
 
 D., T. & I. Rd. Co.
 
 v.
 
 Rohrs,
 
 114 Ohio St., 493, 151 N. E., 714.
 

 Even if it be conceded that the defendant company was negligent, in that the signal bell did not ring or the target signal did not swing, or that the company was guilty of any other act of negligence claimed by the plaintiff, yet the facts, as shown by the pleadings and by statement of counsel, are such that in our judgment the plaintiff himself was guilty of such contributory negligence as would justify the trial court in sustaining the motion for a directed verdict. There was a dense fog at the time and place in question, so that the plaintiff could only see a few feet in front of his machine.
 

 The statement of counsel of what he expected the evidence to prove contains the following:
 

 “They drove along at a moderate rate of speed, and got outside of the city limits and got nearly to the Terminal crossing and slowed down to a very slow rate of speed, and there was a fog in the air and it was very hard to distinguish objects ahead, and there was standing on the crossing of the Chicago Pike a train on the Terminal Eailroad Company’s tracks, and without any warning and without any lights or any means of notifying travelers that the train was blocking the crossing.
 

 
 *569
 
 “When Mr. Hughes got almost up to the train he discovered it; he swung his wheels to the left, and the rear end of his car swung around and caught between two freight cars. The train then started and dragged him off the road into the ditch. ’ ’
 

 This court, in
 
 Pennsylvania Co.
 
 v.
 
 Morel,
 
 40 Ohio St., 338, a railroad crossing case where the view was partially obscured and the noise of the plaintiff’s wagon drowned that of the train,
 
 held
 
 that:
 

 “The fact that the view was obstructed did not excuse his neglect to stop and listen; it made his neglect to do so greater. We think the evidence clearly proved him guilty of contributory negligence. ’ ’
 

 In
 
 Baltimore & Ohio Bd. Co.
 
 v.
 
 McClellan, Admx.,
 
 69 Ohio St., 142, 68 N. E., 816, this court held:
 

 “1. The rule that a person in full possession of his senses, of sight and hearing should exercise them to protect himself from danger when about to cross a known track of a steam railroad at a street crossing, applies to a condition where the atmosphere is more or less clouded by steam and smoke, and it is negligence on his part which will defeat a recovery for injuries received from a passing train to undertake to cross without waiting for the atmosphere to clear so that his vision may be unobstructed, or taking other adequate means to ascertain the presence of danger.”
 

 In the case of
 
 C., C., C. & I. Ry. Co.
 
 v.
 
 Elliott,
 
 28 Ohio St., 340, it was announced:
 

 “The omission to ring the bell or sound the whistle at public crossings is not of itself sufficient
 
 *570
 
 ground to authorize a recovery, if the party, notwithstanding such omission, might, by the exercise of ordinary care, have avoided the accident.
 

 “What is such contributory negligence as will defeat a recovery is usually a question of mixed law and fact, to be determined by the jury from all the circumstances of the case and under proper instructions from the court; but where the undisputed facts show that by the exercise, of ordinary care a party might have avoided injury, he cannot recover.
 

 “It is the duty of a traveler upon the highway, when approaching a railroad crossing to make use of his senses to ascertain if there is a train in the vicinity; and if, when in full possession of his faculties, he fails to see or hear anything, when a prudent man, exercising his eyes and ears, with ordinary care, would have discovered a train in close proximity, and he is thereby injured, he is guilty of such negligence as will prevent a recovery. ’ ’
 

 The foregoing pronouncements of this court give a general summary of the rules of law applicable to the relative rights of traveler and the railroad company at a grade crossing. At crossings where gates are maintained this court, in
 
 C., C., C. & I. Ry. Co.
 
 v.
 
 Schneider,
 
 45 Ohio St., 678, 17 N. E., 321, announced the following rule:
 

 “To persons in the street who are approaching the railroad tracks with a view to crossing, an open gate is notice that the track is clear, and that it is safe to cross * * *. Persons approaching such crossings have the right to presume, in the
 
 *571
 
 absence of knowledge to the contrary, that the gatemen are properly discharging their duty, and govern themselves accordingly, and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only' from a disregard by the gatemen of their duties. ’ ’
 

 "While it is true that in the instant case there was no question of gates or watchmen, the same principle is involved, because it appears that an automatic signal device was maintained at this crossing, which, at the time and place in question, was not working. A • well-annotated case,
 
 Jacobs
 
 v.
 
 Atchison, T. & S. F. Ry. Co.,
 
 97 Kan., 247, 154 P., 1023, Ann. Cas. 1918D, 384, found in L. R. A. 1916D, at pages 783, 788, gives the following conclusion to be deduced from the cases relative to the right of a traveler to rely on automatic signals at crossings:
 

 “It is difficult to deduce from the cases any definite rule as to the extent to which a traveler on a highway may rely upon automatic safety devices placed at railroad crossings for his protection. The cases seem to agree that the presence of such devices at a crossing may properly be regarded as having some effect upon the care required of a highway traveler, but some of the cases, while apparently recognizing this principle, require such additional precautions upon the part of the traveler, when considering a concrete example, that there seems to be no practical difference between the care required when an automatic device is present and that required when no such device is maintained.
 

 
 *572
 
 “About all that may be said is that a traveler approaching a crossing at which he knows an automatic signal is maintained, while entitled to place some reliance upon the indication of safety which silence of the signal implies, is nevertheless bound to use such care in addition as an ordinarily prudent man would use under such circumstances.”
 

 The record discloses that the plaintiff below knew of the existence of the railroad track and the highway grade crossing; he had anticipated finding the same, because he had slowed down from 15 miles to 5 to 8 miles an hour; he was keeping a lookout and driving cautiously, he avers; there was a dense fog over the pike and railroad tracks at the time.
 

 Even if he did not hear any warning bell or see the swinging signal, we do not think he had a right to rely on such automatic device entirely for his safety, or that he was absolved from still using such care, in addition, as an ordinarily prudent man would use under such circumstances. While it is true that ordinarily the degree of care an ordinarily prudent man would use under the circumstances disclosed is a question for a jury, however, we think the conceded facts — the lights that did not penetrate the fog, the traveling at a rate of speed such that when he discovered the train upon the track the swinging of his wheels to the left caused the rear end of his car to swing around and catch between two freight cars, so that when the train started it dragged him off the road into the ditch — all show that the plaintiff below was chargeable with contributory negligence, that he did not exercise that degree of care which one of ordinary
 
 *573
 
 prudence should have used, and that therefore the trial court was right in directing a verdict.
 
 C., C., C. & St. L. Ry. Co.
 
 v.
 
 Lee, Admr.,
 
 111 Ohio St., 391, 145 N. E.,
 
 843; Buell, Admx.,
 
 v.
 
 N. Y. Central Bd. Co.,
 
 114 Ohio St., 40, 150 N. E., 422.
 

 The case of
 
 Worden
 
 v.
 
 Chicago & N. W. Ry. Co.,
 
 180 Wis., 551, 193 N. W., 356, is illustrative of the principle. Eschweiler, J., says in the opinion, at page 552 (193 N. W., 356):
 

 “Knowing of the track and highway crossing he drove his automobile on a very dark night into a standing freight train. With proper headlights on his automobile and driving with the degree of care the law requires of him, he should have seen and known of such obstruction in time to have avoided the collision. However liberally we are bound to and do construe the language of this complaint in an effort to sustain it as stating a possible cause of action, we are nevertheless compelled to hold that the demurrer should have been sustained. Such ruling is required by many decisions here and elsewhere.
 
 Lauson
 
 v.
 
 Fond du Lac,
 
 141 Wis., 57, 60, 123 N. W., 629 [25 L. R. A. (N. S.), 40, 135 Am. St. Rep., 30];
 
 Yahnke
 
 v.
 
 Lange,
 
 168 Wis., 512, 515, 170 N. W., 722;
 
 Puhr
 
 v.
 
 C. & N. W. R. Co.,
 
 171 Wis., 154, 160, 176 N. W., 767 [14 A. L. R. 1334];
 
 Clemens
 
 v.
 
 State,
 
 176 Wis., 289, 309, 185 N. W., 209 [21 A. L. R., 1490];
 
 Bahlert
 
 v.
 
 C., M. & St. P. R. Co.,
 
 175 Wis., 481, 185 N. W.r 515;
 
 Twist
 
 v.
 
 M., St. P. & S. S. M. R. Co.,
 
 178 Wis., 513, 190 N. W., 449;
 
 Plautz
 
 v.
 
 C., M. & St. P. R. Co., ante
 
 [180 Wis.], page 126, 192 N. W., 381;
 
 Kanass
 
 v.
 
 C., M.
 
 
 *574
 

 & St. P. R. Co., ante
 
 [180 Wis.], page 49, 192 N. W., 383;
 
 Spencer
 
 v.
 
 Taylor,
 
 219 Mich., 110, 118 N. W., 461, and cases there cited;
 
 Philadelphia & R. R. Co.
 
 v.
 
 Dillon
 
 (Del.), [1 W. W. Harr, 247], 114 A., 62, 15 A. L. R., 901, note.”
 

 In
 
 Kelly
 
 v.
 
 Knabb
 
 (D. C.), 300 F., 256, it is said: “Under the facts stated in the declaration, bearing in mind Section 1021 of the Revised G-eneral Statutes of Florida, defining the lights required to be used on a car operated on the public highways of this state, I cannot conceive how a driver of the plaintiff’s ear in the night-time, in a car equipped as required by law and using any ordinary care whatever in looking ahead, could have had a collision such as this one. I am of opinion that the negligence of plaintiff’s agent is apparent upon the face of the declaration, and that such negligence was the proximate cause of the accident. The demurrer will therefore be sustained.”
 

 Other authorities might be cited to the same effect, but the foregoing will be sufficient.
 

 It is to be noted also that the averments of contributory negligence in the answer of the defendant below are not denied by a reply by the plaintiff, and that, while the record shows that after the motion for a directed verdict was made the plaintiff asked leave to amend the petition by interlineation in several respects, he did not see fit to interpose a denial, by a reply, of the averments of negligence contained in the answer.
 

 Upon the entire record, we are of opinion that the court of common pleas was right in the direction of a verdict. The judgment of the Court of
 
 *575
 
 Appeals is therefore reversed and that of the court of common pleas affirmed.
 

 Judgment of the Court of Appeals reversed and that of the common pleas affirmed.
 

 Marshall, C. J., Jones, Matthias, Kinkade and Robinson, JJ., concur.
 

 Allen, J., concurs in proposition 1 of the syllabus and in the judgment.