CINCINNATI, MIDDLETOWN & DAYTON MOTOR FREIGHT CO, INC v LOUISVILLE & NASHVILLE RD CO

Ohio Appeals, 1st Dist, Hamilton Co

No 5132. Decided Feb 8, 1937

Stanley Silversteen, Cincinnati, and Charles K. Yontz, for appellant.

Dinsmore, Shohl, Sawyer & Dinsmore, Cincinnati, for appellee.

## OPINION

By ROSS, J.

Appeal on questions of law.

The action was instituted by appellant to recover from appellee compensation for damages caused to the truck and trailer of appellant when the same collided with a caboose, pushed by an engine upon a railroad of appellee crossing a street in the City of Cincinnati.

The court instructed a verdict for appellee at the close of the evidence of plaintiff.

The facts developed by the evidence are that Front Street extends in a general eastwardly direction along the southern part of the city of Cincinnati. This area is occupied extensively by switching tracks and spur lines of various railroads. One of these crosses Front Street almost at right angles a few feet east of Smith Street. The tracks are directly beneath an overhead bridge and the tracks lie between the supporting uprights of the bridge. The substructure of the bridge is painted a dark red. At the southwest corner of Smith & Front Streets is the Jones & Laughlin building, and the eastward corner of this building is 45 feet from the west rail of the railroad of appellee. The driver for appellant testified he was proceeding eastwardly on Front Street at 11:45 A. M., February 9th, 1934, driving a truck hauling two large trailers. The total weight of this train with its load of 26.000 lbs. is 52,300 lbs.

The driver was familiar with the locality and testified that in the past a brakeman or other employe of the railroad stood in the street and flagged approaching traffic when a train was about to cross Front Street.

The driver of appellant's equipment further testified that he could not see the tracks of appellee south of Front Street until he had passed the east corner of the Jones & Laughlin building, 45 feet from the west rail of the railroad, that as he passed this point, he was moving at the rate of 15 miles per hour, and that he could not stop his equipment in less than 45 feet. He did pass the east corner of the building and then saw a caboose pushed by an engine proceeding northwardly about to cross

Smith Street. He at first tried to guide the equipment to the north side of Front Street, but, seeing a vehicle approaching from the east and in his path, swung back to the south side of Front Street and collided with the caboose, also painted dark red.

The effect of this evidence is that the driver of the appellant's equipment passed a point of visibility at a rate of speed which prevented him from stopping in time to avoid a collision if a train was about to cross Front Street at that point.

The distance from this point, the Jones & Laughlin building, was 45 feet. It required 45 feet to bring the equipment to a stop at the speed at which the equipment was permitted to pass such point.

The only possible excuse for such action was the fact that the driver asserted that the appellee in the past had provided a flagman when a train was about to cross Front Street. It is evident that the driver must have placed sole reliance upon the custom of the railroad company. That he cannot do so has been repeatedly held by the Supreme Court of this state as well as by this court also: In the case of **Pennsylvania Railroad Co. v Rusynik, 117 Oh St 530**, the first paragraph of the syllabus is:

"When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with an intention of crossing over, it is the duty of such traveler, before going upon the railway, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby. When the view of such traveler in either direction is temporarily obscured by a passing train, smoke, steam or dust arising therefrom, it is the duty of such traveler to defer his crossing and remain in a place of safety until such obstruction has passed away and a clear view is afforded."

It is obvious in the instant case and certainly reasonable minds could not differ that had the driver proceeded past the point where visibility was possible, at speed permitting him to stop after the existence of the caboose and engine on the track was apparent, no injury would have resulted.

Again in **Lohrey Packing Co. v Baltimore & Ohio Rd. Co., 131 Oh St 386**, at page 389, the court say:

"While safety gates in an upright position may give the traveler assurance that he can safely pass, yet no one can know when they will start to descend; but when they do they give to the traveler assurance of imminent danger which calls for caution. The driver testified that he confined his attention entirely to his effort to beat the gates and that he kept his eyes upon their descent the entire time. Had he exercised the caution that an ordinarily prudent man would have exercised under the same circumstances by applying the brakes to his car and looking in the direction of the approaching train, the accident could have been avoided. This he failed to do. A driver upon a highway cannot rely upon an assumption that a crossing protected by gates will always remain safe. He knows gates are placed there for his own safety; but he also knows that they may come down at any time. The protection provided by the use of safety gates is not unlike the protection taken by railroad companies in the maintenance of automatic signal alarms. In the latter class of cases, we have held that the failure of such alarms to exercise their proper functions does not absolve the traveler from the duty of exercising such care as ordinarily prudent men would use under similar circumstances. **Toledo Terminal Rd. Co. v Hughes, 115 Oh St 562, 154 NE 916; Columbus, Delaware & Marion Electric Co. v O'Day, Admrx., 123 Oh St 638, 176 NE 569.**"

In this case the court divided on the question as to whether or not the case should have been submitted to a jury. While the matter of crossing gates is somewhat different from the presence of a flagman, as far as the contributory negligence of the driver is concerned the principle is the same.

To hold that in the instant case, the case should have been submitted to a jury is in effect holding that a jury would have been justified in finding no evidence of contributory negligence, although the driver had deliberately passed a point where he could have seen the approaching caboose and engine and stopped his equipment, if he had been proceeding at a speed permitting him to do so.

Our conclusion is that the evidence conclusively shows some negligence on the part of the driver contributing to cause

the injuries of which his employer, the appellant, now makes complaint.

The judgment is affirmed.

TATGENHORST, PJ, and HAMILTON, J, concur.