BOWMAN, APPELLEE, *v.* THE BALTIMORE & OHIO RD. CO., APPELLANT.

(No. 582—Decided April 18, 1949.)

*Messrs. Young & Young,* for appellee.
*Mr. G. Ray Craig,* for appellant.

FESS, J. This is an appeal on questions of law from a judgment entered upon a verdict in favor of plaintiff in the sum of $5,000.

About 11 a. m. on February 16, 1947, plaintiff was driving his automobile south approaching defendant's double tracks, which crossed the highway at grade in an easterly and westerly direction. The day was clear but the road was slippery on account of a light snow.

Parallel to the road and east of it was an embankment of an abandoned interurban line, approximately

20 feet high extending to a point about 60 feet north of the north rail of the track. Within this 60 feet was a large cement pier or abutment, 6 feet wide from north to south. The south side of this pier was 21 feet from the north rail of the track. As a person approached the crossing from the north, there was an unobstructed view toward the east at a point 60 feet from the nearest rail to the north side of the pier 27 feet from the rail, and again from a point 21 feet from the rail. East of the crossing was a natural rise in the ground through which the roadbed was cut, but neither the height of this rise nor its distance east of the crossing appears in the record. From the photographs introduced in evidence, it appears that the rise started at a substantial distance east of the crossing; it does not appear that this cut was deep enough to hide a train therein. On direct examination defendant said that a person could see several hundred feet down the track but not far enough to miss a fast train.

Defendant's evidence indicates that from a point 50 feet north of the north rail a man could be seen on the track 800 feet to the east. At 40 feet north of the north rail a man could be seen 1,014 feet to the east. At 12 feet north of the north rail there was an unobstructed view for a mile. These measurements were made by a civil engineer whose testimony was not contradicted.

On cross-examination, plaintiff admitted that at a point 40 feet north of the tracks he could have seen a train approaching from the east. On direct examination, plaintiff testified as follows:

"Q. Now will you tell the jury as you were driving along and approaching that crossing, will you tell the jury just exactly what happened in your own words? A. Well, there is between the abutment and the tracks, looking east thru that gap there is a raise on the other

side of the abutment which makes it impossible to see too far.

"Q. How far would you say you could see down there? A. You could see several hundred feet but not far enough to miss a fast train.

"Q. Now go on and tell the jury what took place? A. I was listening for the whistle or a horn and at the same time I reduced my speed considerably, and in passing this gap there was no train in sight; while I was passing the abutment the train perhaps slipped up; there was no horn or whistle until just as it approached at the abutment.

"Q. How far away were you from the tracks when you first saw the train? A. There is only three to four feet between the bumper and the rails when you can lean forward and see down the track and see anything approaching any distance at all.

"Q. When you got to that point could you see the train? A. I saw it just as it whistled.

"Q. Was that the first whistle that was sounded? A. Yes, sir.

"Q. Was any bell ringing? A. No, sir.

"Q. What did you do when you saw the train and heard the horn? A. I applied my brakes.

"Q. Were you able to stop? A. I wasn't. The distance was too short.

"Q. How fast would you say you were going at that point? A. Approximately 7 to 8 miles an hour.

"Q. Then what happened? A. I set on the rail in front of the Deisel.

"Q. What happened? Did the train strike you? A. It struck the car on the front end of the car, having passed an inch in front of the windshield and tore it off, frame and all."

From the evidence it appears that a person on the highway would have a view to the east, when within

60 feet of the north rail, unobstructed except for the 6-feet obstruction made by the pier. Defendant's evidence tends to show that a person on the road immediately west of the pier and 25 feet north of the north rail could see a man 395 feet down the track. As to the speed, the train was going 75 miles per hour and plaintiff, who had been going 25 miles an hour, slowed down to 7 or 8 miles per hour as he approached the tracks. If plaintiff was going 8 miles per hour as he passed the abutment and the train was traveling 75 miles per hour as it passed the abutment, it is obvious that plaintiff's automobile would have collided with the side of the train.

Motions to direct a verdict for the defendant were made and overruled at the conclusion of plaintiff's case and at the close of all the case. The motions were overruled possibly upon the principle that the evidence of obstruction to plaintiff's view by the abutment and the rise in the terrain to the east rebutted the inference of contributory negligence on the part of the plaintiff and presented a question of fact for the jury. However, the inference of contributory negligence arising from failure to look or listen can be rebutted or removed only by proof of facts or circumstances showing that it was not reasonably practicable to look or listen, of such circumstances as would ordinarily induce persons of common prudence to omit such precautions, or of such circumstances as would render looking and listening unavailing. On the contrary, where the danger at a railroad crossing is increased by conditions obstructing the vision, greater care and caution were imposed upon a person about to pass over such crossing. *Baltimore & O. Rd. Co.* v. *McClellan, Admx.*, 69 Ohio St., 142, 157, 68 N. E., 816; *Pennsylvania Co.* v. *Morel*, 40 Ohio St.,

338; *Woodworth, Admx.,* v. *New York Central Rd. Co.,* 149 Ohio St., 543, 552, 80 N. E. (2d), 142.

In our opinion, the instant case cannot be distinguished from *Detroit, T. & I. Rd. Co.* v. *Rohrs,* 114 Ohio St., 493, 151 N. E., 714, where a shed 68 feet south of the highway and 15 feet west of the railroad obstructed the plaintiff's view. In the instant case the abutment was 52 feet east of the center of the highway and 21 feet from the track. In *Ballmer, Admx.,* v. *Penn. Rd. Co.,* 59 Ohio App., 221, 17 N. E. (2d), 435, the view was obstructed up to a point within 28 feet of the tracks. In that case this court entered final judgment for defendant, which decision was inferentially affirmed in *Patton, Admx.,* v. *Penn. Rd. Co.,* 136 Ohio St., 159, 24 N. E. (2d), 597.

The judgment is therefore reversed and final judgment entered for the defendant. Having arrived at this result, we deem it not necessary at this stage of the proceedings to consider other errors assigned.

*Judgment reversed.*

CONN and CARPENTER, JJ., concur.