The Continental Baking Co., Appellee, *v.*
The Pennsylvania Rd. Co., Appellant.

(No. 4419—Decided February 6, 1950.)

*Messrs. Marshall, Melhorn, Wall & Bloch,* for appellee.

*Messrs. Shumaker, Loop, Kendrick & Winn,* for appellant.

Fess, J.  This is an appeal on questions of law from a judgment in the sum of $811.34 for property damage entered on a finding on behalf of the plaintiff by the court without the intervention of a jury.

At about 5:30 a. m. on the cold, snowy morning of November 23, 1945, and while it was still dark, plaintiff's truck loaded with baked goods was being operated by one of plaintiff's employees, in the course of its business, in a southerly direction on the County Line road. For a number of years the driver had driven over this route six days a week. He had good eyesight and hearing. The truck was painted white, operated quietly and was equipped with good brakes, tires and lights. It had only one door which was a collapsible folding door on the right hand side opposite the driver's seat. Only a glass window was on the left side of the driver—no door. For half a mile north of the crossing, between the highway and the crossing, there was an open field which was completely free from any obstruction to the view of the tracks by a person approaching the crossing.

The driver testified that, as he approached the tracks, he stopped the truck about 30 feet north of the tracks, opened the door and looked for approaching trains. The tracks crossed the highway at an angle of some 45 degrees. Because of the angle and the location of the door toward the front of the truck, the driver could not see more than 160 or 165 feet up the track to his right, although, to obtain a better view, he had turned his truck slightly to his right and had leaned forward over the wheel to look. The driver said also that, as he started up to cross, he left the door open and proceeded to cross in slow gear at 10 to 15 miles per hour, when his truck was hit by the engine of the defendant. At the rate he was traveling he could have stopped within 12 or 13 feet. The distance from the north rail of the northbound track and the north rail of the southbound track was 12 feet 8½ inches.

We quote from the driver's statement as follows:

"Q. Then when you started up and crossed the tracks, did you leave the door open or did you close it? A. I left it open.

"Q. You left it open. All right, now, what happened after you started up to go across the tracks? A. Well, that would be kind of hard to explain, but I almost got across, and that is the last I remember of."

In answer to further questions, he said he looked at the time he opened the door and continued to watch after he started to cross. He said he saw no headlight and did not see the train at any time before it struck the truck. It may be observed that the driver's range of vision was limited to 165 feet by the obstruction to his view imposed by the narrow outlook of his truck to his right which would necessarily be reduced more and more as he approached the tracks. He was not asked whether he listened and did not testify directly that he did listen, but said he had opened the door and heard no bell or whistle. Two members of the crew testified that after the collision they went back to the crossing and the driver, who was then somewhat dazed, told them he heard the whistle but could not stop. Upon rebuttal, the driver said he did not remember making the remark.

Defendant's train consisted of a locomotive, tender and caboose. The engineer, fireman and brakeman who were riding in the cab of the engine each testified positively that the headlight was burning brightly, the automatic bell was ringing and the whistle was blown for the crossing. Each of them testified the train was traveling at 40 to 45 miles per hour. Although the emergency brakes were applied and the engine thrown into reverse, it was not stopped until a half or three quarters of a mile down the track. The engineer testified that if he had been pulling a train of cars he could have stopped within half the distance because of the

additional braking power, and that the rails were wet at the time of the collision. None of the three members of the crew who claimed to have been watching down the track observed the truck until the collision.

In his conclusions of fact (denominated as findings of fact) the court found, in part, as follows:

1. As plaintiff's driver approached the tracks of defendant he stopped the truck, opened the truck door and looked and listened for approaching trains. There being no trains within sight or hearing, plaintiff's driver assumed he could safely cross the tracks and, continuing to look and listen, cautiously moved forward upon the tracks.

2. When he had almost completely crossed the tracks the truck was struck by a train, consisting only of a locomotive and tender, operated by defendant in a southeasterly direction on its tracks, and approaching plaintiff's driver from the right rear at an excessive rate of speed. Although the train crew testified that the speed of the train was only 45 miles per hour, the weather was extremely cold, the cab of the locomotive was cold, the crew was on its way home, the locomotive was not within seeing or hearing distance when plaintiff's driver stopped the truck, the locomotive proceeded approximately three-fourths of a mile after the collision before it could be stopped, and the court finds that the speed of the train was greatly in excess of 45 miles per hour.

3. At the time of the collision, although visibility was limited by darkness and snow and a strong wind blowing from the east toward the west carried the sound of the train away from the highway and defendant's tracks cross the highway at an acute angle, thus further limiting the view of the tracks by travelers on the highway, the defendant, with knowledge of these facts, operated its locomotive at an unreasonable,

highly dangerous and excessive rate of speed, without keeping a proper lookout and without proper lighting and without warning plaintiff's driver or other travelers upon the highway of the approach of the locomotive, by bell, whistle, watchman, gates, automatic flasher signals or other signal which could be seen or heard by them and although defendant was not then transporting any passengers or property and had no schedule to maintain.

4. Defendant failed to stop or slacken the speed of its train even though plaintiff's truck was in plain sight upon the tracks. If the crew of defendant's locomotive had kept a proper lookout it would have seen plaintiff's truck in time to have given ample warning or to have slackened the speed sufficiently to avoid the collision.

5. On the other hand, neither plaintiff nor plaintiff's driver was negligent. The driver did everything reasonably possible to protect himself and plaintiff's property from injury. The sole proximate cause of the collision and resultant damage was defendant's negligence.

As indicated above, there is no evidence to support the finding that plaintiff's driver continued to listen as he moved upon the tracks, except the negative testimony of the driver that he heard no bell or whistle. Since the crossing was in open country, there is likewise no evidence to indicate that the train was being operated at an unlawfully excessive rate of speed. The finding, which imports that the crossing was peculiarly hazardous, requiring precautions by the defendant at the crossing in addition to those prescribed by law, is not supported by any evidence and is contrary to law. The finding that the defendant failed to stop or slacken the speed of its train even though plaintiff's truck was in plain sight upon the tracks is im-

material since the doctrine of last clear chance is not an issue in the case.

The driver testified that he looked but did not see the headlight or the train and that he did not hear the whistle or bell. His testimony was positively contradicted by the three members of the crew. This conflict with respect to looking presented a fact question for the trier of the facts and a reviewing court is bound by the finding unless it be found to be manifestly against the weight of the evidence. The criterion in this respect is the credibility of the testimony and not the number of witnesses. As to the looking, the driver's testimony was positive but as to his listening it was negative and the finding of the trial court importing that the driver listened at a time and place and in such manner as to be effective is not supported by any credible evidence. See *Toledo & Indiana Rd. Co.* v. *Yhalkee,* 51 Ohio App., 378, 1 N. E. (2d), 163.

Since the finding that the headlight was not burning stands, the defendant was guilty of negligence. But the serious question which then arises is whether (as found by the court) the driver did everything reasonably proper to protect himself and plaintiff's property from injury and the sole proximate cause of the collision and resultant damage was defendant's negligence. Had the collision occurred during daylight, there would be no doubt that the driver would be found guilty of negligence as a matter of law, barring recovery. Had not the driver so fortuitously escaped death and thereby been unable to be present as a witness and contradict the testimony of the members of the crew, the plaintiff would also have been barred of recovery.

In *Woodworth* v. *New York Central Rd. Co.,* 149 Ohio St., 543, 80 N. E. (2d), 142, the court applied the look and listen rule to a collision at night. In that case, which was a death case, the testimony that the

headlight was burning and the signals given and the train was roaring down the tracks was uncontradicted. In the instant case, the evidence relating to headlight and signals is in dispute and there is an absence of any testimony regarding any noise made by the train. However, in the *Woodworth case*, plaintiff's decedent was clothed with the presumption of exercise of due care which furnished a substitute for actual evidence that the decedent exercised his sense of sight and looked for approaching trains. This presumption was overcome by the positive testimony to the contrary.

Should a driver approaching a railroad crossing at night, when he can not effectively see an approaching train having no lights, who looks and does not see the train, be relieved from the duty of listening at a time and place and in such manner as shall be effective to avoid a collision? If the answer is in the negative, can it be held that as a matter of law his failure to so listen is the proximate cause of his injury or is it a question for the jury?

Where the danger at a crossing is increased by conditions obstructing the vision, greater than ordinary care or caution are imposed upon the driver about to pass over such crossing. *Baltimore & Ohio Rd. Co.* v. *McClellan, Admx.*, 69 Ohio St., 142, 157, 159, 68 N. E., 816; *Toledo Terminal Rd. Co.* v. *Hughes,* 115 Ohio St., 562, 154 N. E., 916; *Pennsylvania Rd. Co.* v. *Rusynik,* 117 Ohio St., 530, 536, 159 N. E., 826; *Woodworth, Admx.,* v. *New York Central Rd. Co., supra.*

In cases where a party testifies that he looked and listened but did not see or hear an approaching train, the doctrine of incontrovertible facts is applied in determining that the looking and listening were not at a time and place and in such manner as to be effective. *Toledo & Indiana Rd. Co.* v. *Yhalkee, supra*; *Detroit. Toledo & Ironton Rd. Co.* v. *Rohrs,* 114 Ohio St., 493, 151 N. E., 714.

Plaintiff's driver was bound to listen as well as look as he was about to cross the tracks. He looked but could not see the train because the night was dark and the train was dark. Under the circumstances, it was his duty to listen in such manner as his listening would be effective to warn him of the approach of the train. The duty of constantly and carefully listening is as imperative as that of constantly and carefully looking. *Paul* v. *Philadelphia & Reading Ry. Co.*, 231 Pa., 338, 342, 80 A., 365; *Rhodes* v. *Penna. Rd. Co.*, 298 Pa., 101, 147 A., 854; *Kolich* v. *Monongahela Ry. Co.*, 303 Pa., 463, 154 A., 705; *Valera* v. *Reading Co.*, 349 Pa., 123, 36 A. (2d), 644.

When an inference of contributory negligence arises, it is incumbent upon the party against whom the inference arises to meet the inference by evidence of equal weight. In order to avoid the application of the look and listen rule, it is necessary for the plaintiff to produce credible evidence excusing the failure to look and listen. A common example is where there is an implied invitation to cross by reason of a watchman or crossing signals. No such evidence was introduced in the instant case. Certainly the fact that it was dark, that the wind was blowing from east to west, that it was snowing and that the track was at an angle of 45 degrees did not excuse plaintiff's driver from his duty to look and listen in such a manner as to be effective. It is the contention of the plaintiff, supported by the findings, that the train was proceeding at an unlawful rate of speed and that the crossing was peculiarly hazardous, but as previously indicated the evidence does not support such contention.

There is no direct testimony that the train made any noise as it approached the crossing, but it is common knowledge that even a light train does make some noise. Cf. *Patton, Admx.,* v. *Penna. Rd. Co.,* 136 Ohio

St., 159, 163, 24 N. E. (2d), 597. The fact that the wind from the east might divert the sound of the train or make hearing more difficult merely added to the duty of the driver to exercise more vigilantly his sense of hearing as well as his sense of sight. It is most difficult to conceive a situation where a train, even on a special run, would have no lights whatever either in the cab or caboose. With a train approaching at an angle of 45 degrees, a traveler on the highway could have readily observed such lights. Under the record in this case, where plaintiff's driver testifies that he looked but did not see and fails to testify positively that he listened, but does testify that he did not hear the approaching train, under the doctrine of incontrovertible facts, such driver did not listen at a time and place and in such manner as to be effective to avoid the collision and was guilty of negligence as a matter of law proximately contributing to the damage suffered by the plaintiff.

*Judgment reversed and final judgment
for defendant.*

CONN and CARPENTER, JJ., concur.