Raymond E. FISHER, Plaintiff-Appellee,

v.

CHESAPEAKE & OHIO RAILWAY COMPANY, a Corporation, Defendant-Appellant.

No. 12767.

United States Court of Appeals Seventh Circuit.

March 14, 1960.

Rehearing Denied April 13, 1960.

Joseph P. Carr, Chicago, Ill., Erwin W. Roemer, Chicago, Ill., for appellant.

Henry T. Synek, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, CASTLE, Circuit Judge, and MERCER, District Judge.

MERCER, District Judge.

Defendant prosecutes this appeal to review a judgment entered against it upon a verdict of the jury empaneled to try this action for damages for personal injuries sustained by plaintiff in a collision between a truck driven by plaintiff and one of defendant's trains. Errors relied upon for reversal, among others, relate to the failure of the trial court to grant defendant's motions for a directed verdict and its motion to set aside the verdict, or, in the alternative, for a new trial.

The accident in question occurred on February 7, 1954. About noon, on that day, plaintiff was driving a tractor-trailer combination east on United States Highway 224 near Findlay, Ohio. The day was clear and the road was dry. As plaintiff approached a grade crossing of Highway 224 and defendant's tracks, he saw a south-bound freight train crossing the highway in front of him. When he saw the train, he removed his foot from the accelerator and let his vehicle decelerate by reason of engine drag and loss of power occasioned by that act. When plaintiff was about 600 feet from the crossing, he saw the caboose of the train clear the highway crossing. He then accelerated to a speed which he estimated at 30 to 35 miles per hour. When he reached a point about 150 feet from the crossing, he looked to the right and saw a north-bound train approaching, which was then about 600 feet south

of the crossing. Plaintiff then applied his brakes and guided his vehicle back and forth across the highway attempting to stop. He was unable to stop. The front of his tractor collided with the third unit of the three-unit diesel engine of the north-bound train. A state highway patrolman who investigated the accident testified that there were skid marks on the highway for a distance in excess of 113 feet which led to the rear wheels of plaintiff's trailer-tractor combination. Plaintiff's trailer was 32 feet in length. The over-all length of plaintiff's vehicle was the length of the trailer, plus the length of the tractor which he was driving on that date. It thus appears that plaintiff applied his brakes at a point more than 150 feet west of the crossing. Plaintiff testified that, at the rate of speed at which he was traveling at the time he applied his brakes, it would require anywhere from 150 to 190 feet to bring his tractor-trailer unit to a stop, with the total weight and distribution of the load he was then carrying.

At the place of the occurrence the highway crosses defendant's railroad tracks at approximately a right angle. The crossing is level and is marked by a cross-buck crossing signs and a prior warning sign as required by State statute. The only fixed obstruction of a motorist's view to the South was a house located on the south side of the highway some 500 feet west of the crossing. There also was a depression in the highway which reached its low point some 200 feet west of the crossing which, according to plaintiff's testimony, obstructed plaintiff's view to the south as he traveled down-grade to the low point thereof. The only other obstruction of plaintiff's vision as he approached the crossing on the day in question, was the south-bound train which had just passed over the crossing. In this respect, the plaintiff testified that he first saw the north-bound train when the front of the engine of that train came into view from behind the caboose of the south-bound train. Plaintiff had made numerous trips over Highway 224 between Chicago and New York prior to the day of the accident, although he did testify he had never passed this particular crossing before.

The question is not open to us for decision as a matter of first impression. When we apply the law of Ohio, as we must do, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, as pronounced by reported opinions of the appellate courts of that State, we must conclude that the trial court erred in denying defendant's motion for a directed verdict.

The law of Ohio relating to the duty of care required of a motorist approaching a railroad grade crossing is succinctly summarized by the Supreme Court of that State in the language from two of its reported opinions as follows:

"The law recognizes the fact that ordinarily, because of unalterable circumstances, railroad companies in the operation of fast-moving trains cannot be responsible for grade-crossing collisions, and that the burden of avoiding such collisions rests, for the most part, upon the operators of vehicles using such crossings. This rule is made necessary because railroad trains are, in their operation, confined to fixed tracks, and because of their weight, and momentum, cannot be readily stopped within a short distance or space of time." Woodworth v. New York C. R. Co., 149 Ohio St. 543, 80 N.E. 2d 142, 146.

"When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with an intention of crossing over, it is the duty of such traveler, before going upon the railway, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby. When the view of such traveler in either direction is temporarily obscured by

a passing train, smoke, steam, or dust arising therefrom, it is the duty of such traveler to defer his crossing and remain in a place of safety until such obstruction has passed away and a clear view is afforded." Pennsylvania R. Co. v. Rusynik, 117 Ohio St. 530, 159 N.E. 826, 56 A.L.R. 538.

See to the same effect, Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597; Toledo T. R. Co. v. Hughes, 115 Ohio St. 562, 154 N.E. 916; Detroit T. & I. R. Co. v. Rohrs, 114 Ohio St. 493, 151 N.E. 714; Reed v. Detroit, T. & I. R. Co., Ohio App., 132 N.E.2d 776; Bowman v. Baltimore & O. R. Co., 86 Ohio App. 129, 90 N.E.2d 390; Cincinnati, M. & D. M. Freight Co. v. Louisville & N. R. Co., 56 Ohio App. 246, 10 N.E.2d 448.

A brief review of the factual circumstances shown by the evidence in several of the above cases reveals the strict manner in which the Ohio Courts impose the rule against a plaintiff in grade-crossing collision cases.

In the Woodworth case, supra, the existence of floodlights in close proximity to a railroad crossing which might be confused with the headlight of an approaching train was held to be a circumstance which required the deceased motorist to take added precautions sufficient to avoid a collision.

It appears from the opinion in Toledo T. R. Co. v. Hughes, 115 Ohio St. 562, 154 N.E. 916, that the collision occurred at night when automatic warning signals installed at the crossing were not working and when the crossing was obscured by heavy fog. In Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597, 600, a collision occurred at night, when the atmosphere was heavy and cloudy. A motorist's view down the tracks was limited to some 300 feet until a point quite near the crossing was reached. To an argument that the atmospheric conditions and noise prevented the driver from detecting the approach of the train in time to avoid the collision, the court said that such circumstances merely required him to take greater precautions and, "under such circumstances, to insure his safety, it may have been his duty to stop before going upon the tracks."

Continental Baking Co. v. Pennsylvania R. Co., 87 Ohio App. 505, 96 N.E. 2d 258, 262, involved a grade-crossing collision which occurred during darkness on a cold, snowy morning, and which involved a train upon which the court found there were no lights burning. The court held the driver guilty of contributory negligence, saying, 96 N.E.2d at 262: "Plaintiff's driver was bound to listen as well as look as he was about to cross the tracks. He looked but could not see the train because the night was dark and the train was dark. Under the circumstances, it was his duty to listen in such manner as his listening would be effective to warn him of the approach of the train."

In Cincinnati, M. & D. M. Freight Co. v. Louisville & N. R. Co., 56 Ohio App. 246, 10 N.E.2d 448, a driver passed the corner of a building which obscured his view of the tracks, and which was located some 45 feet from the crossing, at a speed of 15 miles per hour. At that time he saw a train approaching and braked his vehicle. He was unable to stop and collided with the train. Customarily, the railroad stationed a flagman at the crossing in question, but it failed to do so on the date of the accident. In commenting upon the evidence, the court said, "The effect of this evidence is that the driver of the appellant's equipment passed a point of visibility at a rate of speed which prevented him from stopping in time to avoid a collision if a train was about to cross" the street upon which he was traveling. 10 N.E.2d at page 449. Again at page 450, the court said:

"It is obvious in the instant case and certainly reasonable minds could not differ that had the driver proceeded past the point where visibility was possible, at a speed permitting him to stop after the existence of the caboose and engine on

the track was apparent, no injury would have resulted."

To the same effect is Bowman v. Baltimore & O. R. Co., 86 Ohio App. 129, 90 N.E.2d 390, where it appeared that the injured plaintiff's view of defendant's tracks was obscured by a concrete pier located in a close proximity thereto and by a rise in ground through which the tracks ran in a sub-surface cut.

In each of the cases hereinabove cited and summarized the court held a claim barred by contributory negligence, principally because the plaintiff was in a position of having first seen an approaching train when it was too late for him to stop his vehicle and avoid a collision at his speed of travel. We think that the case at bar bears no factual distinction from the cited cases.

Here plaintiff approached the railroad crossing in level country. There was no obstruction to his view of the tracks in any feature of the crossing itself. Plaintiff slowed down to let the south-bound train pass over the crossing, and then, if his own testimony is to be believed, he started accelerating to go across on the assumption that no other train was coming. When he was approximately 150 feet from the crossing, and at a point where his brakes would not save him if that assumption were incorrect, he saw the diesel engine of the north-bound train emerge from behind the caboose of the south-bound train. Plaintiff knew that he was approaching a place of danger. Even if he had never seen the crossing before, he was advised of the danger by warning signs marking the approach thereto and by his knowledge of the passage of the south-bound train. Under the circumstances, it was not the exercise of due care for his own safety to proceed toward the crossing at such a speed and in such manner that the brakes of his tractor-trailer would not save him in the event that a second train was approaching the crossing from the south. Applying Ohio law to the facts of this case, we must conclude that plaintiff was guilty of contributory negligence as a matter of law, and that the trial court erred in de-

nying defendant's motion for a directed verdict. Patton v. Pennsylvania R. Co., 136 Ohio St. 159, 24 N.E.2d 597; Cincinnati M. & D. M. Freight Co. v. Louisville & N. R. Co., 56 Ohio App. 246, 10 N.E.2d 448.

Other errors urged by defendant are not considered.

The judgment is reversed and the cause is remanded to the district court with directions to enter judgment for the defendant and against plaintiff.