Sara Jane LAPPIN, Administratrix of the Estate of James D. Lappin, Deceased, Plaintiff-Appellee,

v.

The BALTIMORE AND OHIO RAILROAD COMPANY, a corporation, Defendant-Appellant.

No. 14365.

United States Court of Appeals Seventh Circuit.

Oct. 20, 1964.

Cassatt Martz and Martz, Beattey & Wallace, Indianapolis, Ind., for appellant.

Lee M. LeMay, Indianapolis, Ind., for appellee.

Before HASTINGS, Chief Judge, and DUFFY and SWYGERT, Circuit Judges.

HASTINGS, Chief Judge.

This diversity action was brought by plaintiff Sara Jane Lappin, Administratrix of the estate of James D. Lappin, deceased, against defendant The Baltimore and Ohio Railroad Company to recover damages for the alleged wrongful death of plaintiff's husband James D. Lappin.

Trial was by jury and a general verdict was returned in favor of plaintiff for $45,000.

On appeal, defendant contends the district court committed reversible error in denying defendant's motions for judgment notwithstanding the general verdict, directed verdict and new trial, and in entering an order directing entry of judgment in accordance with the general verdict and entering judgment upon the general verdict.

The accident occurred on February 28, 1960, between 2:00 a. m. and 3:00 a. m. near Columbus, Ohio.

Decedent, a truck driver employed by Spector Motor Freight System, was driving a loaded diesel truck in a westerly direction on Clime Road. As he approached the point where the road intersected defendant's railroad tracks, defendant's diesel powered train was proceeding north toward this intersection at approximately forty to forty-five miles per hour.

Howard Cornelius, a truck driver for Spector, testified he was driving a truck east on Clime Road immediately prior to the accident. He crossed the railroad tracks when the approaching train was approximately 1100 feet south of the intersection. About 150 yards east of the intersection Cornelius' truck met and passed decedent's truck. Cornelius blinked the lights of his truck which, he testified, is a "code of the road" danger signal among truck drivers.

Robert W. Haines testified that preceding the accident he had driven his automobile across the railroad tracks at the Clime Road intersection traveling west while taking his baby-sitter home. As he crossed the tracks he observed the

headlight of the train one and one-half or two miles south of the crossing.

Haines, after delivering the baby-sitter to her home, returned toward the intersection. Aware of the approaching train, he stopped his car on the west side of the crossing. He observed decedent's truck as it approached him from the time it turned off Route 3, a highway approximately 300 yards east of and parallel to the railroad, until the accident.

Haines testified that decedent's truck slowed down momentarily as it reached the incline on the east side of the tracks, but did not stop. He heard the sound of the train's brakes being applied when the engine was about 100 feet south of the crossing. Seeing that a collision was imminent, Haines flicked the headlights of his automobile to low and high beam several times in an attempt to attract decedent's attention.

He testified that the train struck decedent's truck back of the cab either on the rear wheels of the tractor or the front wheels of the trailer. He estimated the speed of decedent's truck to be thirty-five to forty miles per hour at the time of the accident.

Upon defendant's motion, the court submitted interrogatories to the jury which resulted in the following special verdict in addition to the general verdict:

"Special Verdict: We, the jury in this action, find the following special verdict:

"Question No. 1.

"Prior to the collision here in question did the engineer of the Baltimore and Ohio Railroad sound the whistle or horn on the engine?

"Answer: No.

"Question No. 3.

"Prior to the collision here in question, did the engineer of the defendant, The Baltimore and Ohio Railroad Company, ring the bell on the engine?

"Answer: No.

"Question No. 5.

"At any point before reaching the crossing, if he had looked, could James D. Lappin have seen the lights of the approaching train?

"Answer: Yes.

"Question No. 6.

"If your answer is 'yes' to Question No. 5, then answer the following divisions of this question:

"(a) If the decedent, James D. Lappin, had looked to the South when he was at a point 94 feet East of the crossing within what distance could he have seen the light on the train as it approached from the South?

"Answer: Appr. 182 feet.

"(b) If the decedent James D. Lappin, had looked to the South when he was at a point 68 feet East of the crossing, within what distance could he have seen the light on the train as it approached the crossing from the South?

"Answer: Appr. 624 feet.

"(c) If the decedent, James D. Lappin, had looked to the South when he was at a point 39 feet East of the crossing, within what distance could he have seen the light on the train as it approached the crossing from the South?

"Answer: Appr. 4550 feet.

"(d) If the decedent, James D. Lappin, had looked to the South when he was at a point 30 feet East of the crossing, within what distance could he have seen the light on the train as it approached the crossing from the South?

"Answer: Appr. 6000 feet."

On appeal, defendant contends that, as a matter of law, it was not negligent and decedent was contributorily negligent, and that the special verdict of the jury is in irreconcilable conflict with the general verdict.

Simply stated, this appeal is primarily concerned with the fundamental question of whether under the facts before us, as

shown by the record, there was a case of liability properly made out to warrant submission to the jury for its determination. Or, in the same context, was the question of decedent's contributory negligence a jury question.

In determining whether the evidence justifies submission of the case to the jury on either issue, we must look to all the evidence in the record, together with all reasonable inferences to be drawn therefrom. Where such evidence and inferences, when viewed in the light most favorable to the party opposing a motion for directed verdict or judgment n. o. v., are such that reasonable men in a fair and impartial exercise of their judgment, applying applicable substantive law, may reach different conclusions, such motions should be denied. Woods v. Geifman Food Stores, Inc., 7 Cir., 311 F. 2d 711, 713 (1963) and cases cited therein.

It is conceded that Ohio substantive law is applicable in this case.

## I.

The jury found in its special verdict that defendant was negligent in failing to sound its whistle and bell as provided by Ohio law and, by its general verdict, that such negligence was a proximate cause of decedent's death.

The testimony on this issue was as follows.

Haines testified that his car was stopped a few feet on the west side of the tracks when the accident occurred. The car windows were rolled down and the radio was off.

On direct-examination, Haines testified concerning the bell and whistle as follows:

"Q. 29. While you were waiting there for the train to pass, did you hear the whistle being blown on the train?

"A. I can't distinguish whether I did or not.

"Q. 30. And did you hear the bell ringing on the train?

"A. No."

On cross-examination, he testified:

"Q. 174. What did you hear, if anything, Mr. Haines?

"A. I just heard the noise that the train was making, and was aware of the sound, but as far as—

"Q. 175. (Interposing.) Well, now, what kind of noise in particular? Could you distinguish any noise?

"A. You mean can I separate one from the other?

"Q. 176. Could you hear the brakes being applied?

"A. I heard the brakes, yes, when they were applied.

"Q. 177. Did you hear the normal noise of the diesel engine?

"A. Yes, sir."

Haines was not asked whether he was listening for the sounds of the bell and whistle.

Cornelius testified that he heard no noise of the train. He stated, "The only thing I could hear was the roar of the truck I'm driving. Those are awfully noisy inside."

The engineer of the train testified he started blowing the whistle and turned on the engine bell at the whistle post and was blowing the whistle as he approached the crossing. The fireman and brakeman testified they heard the whistle and bell.

Bobbie Jones, a defense witness, testified that at the time of the accident he was at work in a service station located at the intersection of Route 3 and Clime Road. The service station was approximately 300 yards east of the railroad crossing. He said that prior to the accident he observed the headlight of the train and heard its whistle. He estimated the whistle began blowing when the engine was 1200 to 1300 feet south of the crossing.

In determining the issue of a railroad's negligence in a crossing case based on the alleged failure of trainmen to give warning signals required by law when

approaching a crossing, we find the Sixth Circuit has placed its gloss on Ohio substantive law. We adopt the view of that circuit.

In a case quite similar to the one at bar, Clark v. Baltimore & O. R. Co., 6 Cir., 196 F.2d 206 (1952), the court upheld a directed verdict of no cause of action in favor of the railroad. Circuit Judge McAllister, speaking for the court, stated:

"The district court held that the only testimony in support of appellant's contention of negligence because of failure to blow the whistle and ring the bell was entirely negative in character, as contrasted to appellee's overwhelming evidence to the effect that the whistle was blown and the bell rung. *No witness in support of appellant's claim testified that he was listening for any warning signals at any time prior to the accident. Where a witness testifies that warning signals were not given or that he did not hear such warning signals, and it appears that the witness was not listening to hear such signals or not paying attention as to whether they were given or not, such testimony is negative, and in the face of substantial uncontradicted testimony that the signals were given, the evidence is not sufficient to present to the jury the question as to whether such signals were given.* Carter v. Pennsylvania Railroad Co., 6 Cir., 172 F.2d 521; Strider v. Pennsylvania Railroad Co., 6 Cir., 60 F.2d 237; The Continental Baking Co. v. Pennsylvania Railroad Co., 87 Ohio App. 505, 96 N.E.2d 258; Toledo & Indiana Railroad Co. v. Yhalkee, 51 Ohio App. 378, 1 N.E.2d 163. There was substantial uncontradicted testimony that the signals were given, as required by law. Under the authorities above cited, the evidence of claimed negligence on the part of appellee [defendant railroad] in failing to give the warning signals was not sufficient to take the case to the jury." (Emphasis added.) Id. at 211.

■ · In the instant case, only Haines and Cornelius testified to not hearing the bell and whistle. Cornelius testified he did not hear any noise of the train and his diesel truck was "awfully noisy inside." Haines testified he did not hear the bell and could not distinguish whether he heard the whistle. He was not asked whether he was listening for the sound of the bell or whistle. His testimony is closely analogous to the testimony of a witness in the Clark case. There, "One witness for appellant testified: 'I couldn't say I heard a whistle blown.' When asked if she had heard a bell ring, just before the accident, she replied: 'No, I didn't hear the bell ring.' * * * She was not asked whether she was listening to the bell of the locomotive just before the crash." Id. at 210.

There was substantial uncontradicted testimony the statutory signals were given, including that of disinterested witness Jones.

We are led to the conclusion, under the law of Ohio, that as a matter of law defendant was not negligent and the district court erred in submitting this issue to the jury.

II.

■ Our determination that as a matter of law defendant was not negligent as charged in this case effects a final disposition of this appeal. However, although not necessary to such final disposition, we deem it proper to say that based on our examination of the record and the applicable Ohio substantive law, we would hold that plaintiff's decedent was guilty of contributory negligence as a matter of law that would bar plaintiff's recovery in this action.

For the foregoing reasons, the judgment appealed from is reversed and this cause is remanded to the district court with directions to vacate such judgment and to enter judgment for defendant.

Reversed and remanded.