Hart, J.
 

 The principal error claimed by the defendant, appellant herein, is that the trial court erred in overruling its motions for a directed verdict and its motion for judgment notwithstanding the verdict. The only question of importance to be determined is whether, under the circumstances, plaintiff’s decedent was guilty of contributory negligence, as a'matter of law, in attempting to pass over the railroad crossing in question, and, if so, was his negligence in so doing the proximate cause of his death.
 

 Since there were no eyewitnesses to the actual collision which resulted in the death of plaintiff’s decedent, and as a consequence no testimony as to certain facts bearing upon the conduct of both plaintiff’s decedent and the members of the crew operating the train at the time of the collision, certain presumptions arise in favor of both plaintiff’s decedent and defendant, and must be given effect as though proven facts in the case. It is true that one witness whose home is on Whetstone street, north of and next to the crossing, and who was at home in bed but awake- at the time of the accident, testified that he heard no whistle blow or no crossing bell ring and did not even hear the train until a second before the crash. But in view of the fact that there was credible testimony that the signal bell was in operation a few minutes later, and in view
 
 *163
 
 of the fact that the train, going 60 miles per hour, must have made considerable noise as it approached the crossing, it would seem that the witness in question was either not in a position to hear or was not giving attention. At best, his testimony was of a negative character and was scarcely sufficient to overcome the presumption of fact which the law supplies in the absence of evidence to the contrary.
 

 It must be presumed, therefore, that plaintiff’s decedent looked and listened for trains before he went upon the crossing and that he did so at a point where such observation and precaution would be effective for his safety. It must also be presumed that defendant’s engine whistled for the Whetstone crossing at a point not less than 80 or more than 100 rods east of the crossing; that the locomotive bell of the train was ringing continuously from the point above mentioned until the' engine passed the crossing (Section 8853, General Code); and that the locomotive carried a headlight of sufficient candlepower to render plainly visible, at a distance of not less than 350 feet in advance of the engine, whistling posts, land marks and other signal signs (Section 8945-1, General Code). The facts heretofore related, as shown by the record, are substantially uneontradicted; and the facts presumed, as above enumerated, must be taken as true.
 

 The duty of one traveling by vehicle on a public street or highway when approaching and about to cross over steam railway tracks, intersecting such street or highway, has been quite definitely settled in this state by repeated pronouncements of this court.
 

 In the case of
 
 Detroit, Toledo & Ironton Rd. Co.
 
 v.
 
 Rohrs,
 
 114 Ohio St., 493, 151 N. E., 714, the court said:
 

 “It is the duty of a driver of a vehicle upon a public highway when approaching a grade crossing of á steam railroad to both look and listen for approaching trains and to do so at such time and place and in such
 
 *164
 
 manner as will make the looking and listening effective. ’ ’
 

 In the case of
 
 Pennsylvania Rd. Co.
 
 v.
 
 Rusynik,
 
 117 Ohio St., 530, 159 N. E., 826, 56 A. L. R., 538, the court said:
 

 “When a traveler upon a public highway approaches a steam railway which intersects at grade the highway, with one or more tracks, with an intention of crossing over, it is the duty of such traveler, before going upon the railway, to look both ways and listen for the approach of trains; and such looking and listening must be at such time and place and in such manner as will be effective to accomplish the ends designed thereby.”
 

 Under the undisputed facts in this case when plaintiff’s decedent, Patton, reached a point 65 feet south of the tracks he had a clear view of the headlight of the engine for 582 feet east of the crossing, and when he was at a point 40 feet south of the tracks he could have seen the headlight even a greater distance. If his truck was moving toward the tracks at the crossing at the rate of ten miles per hour, while the train was approaching the crossing at the rate of 60 miles per hour or sis times as fast as the truck, the train was but 240 feet from the crossing when his truck was 40 feet away, both approaching the same point, the crossing in question. If the truck was moving at the rate of 20 miles per hour, the train -was. but 120 feet from the crossing when the truck was 40 feet away. Unquestionably, at this time he could have seen the headlight of the approaching train.
 

 "When in this position, which would be a point where his looking and listening would be effective,-a failure to look would certainly have been gross negligence on his part. If he did look he must have seen the headlight of the approaching train and he is chargeable with having seen what could have been seen. If he had been living at the time of the trial, and had testified that when 40 feet from the tracks he looked but
 
 *165
 
 saw no train, it would have availed him nothing because he would be held to have séen what could have been seen.
 

 In the case of
 
 Detroit, Toledo & Ironton Rd. Co.
 
 v.
 
 Rohrs, suyra,
 
 this court held that:
 
 “A
 
 driver of a vehicle upon a highway cannot recover damages for an injury received in a collision at a steam railroad crossing, even though he testifies that he looked and listened and neither saw nor heard anything approaching on the railroad track before going upon the crossing, when the only conclusion that can reasonably be reached upon the evidence is that there is no doubt that had he looked he must have seen the danger, that was immediately at hand, in time to avoid injury.” In this case, Judge Kinkade, speaking for the court, said:
 

 ‘ ‘ Surely it will not do for one to claim the right to recover simply because he has looked and did not see, if the conditions are such that, had he looked, he must have seen. When he says he did look, and the conditions establish the fact that any one who looked would have seen, then, if he says he did not see, his own evidence establishes the fact that he did not look, though he may think he did.” See, also,
 
 Cincinnati, N. O. & T. P. Ry. Co.
 
 v.
 
 Farra
 
 (6 C. C. A.), 66 F., 496;
 
 Erie Rd. Co.
 
 v.
 
 Hurlburt
 
 (6 C. C. A.), 221 F., 907.
 

 On the other hand, if he had listened immediately before going upon the tracks, can there be doubt that he could have heard the signal bell, the locomotive bell, or at least the noise of the train less than 300 feet away? Some excuse for Patton’s going on the track immediately in front of the train is made on the ground that the atmosphere was heavy or murky, and that because' of this condition he was unable to see the approaching train. If the visibility was poor, or his ability to hear was interfered with because of other noises such as that of his truck, he was required to take greater precautions if necessary on that account, and, under such circumstances, to insure his safety, it may
 
 *166
 
 have been his duty to stop before going on the tracks.
 
 Pennsylvania Co.
 
 v.
 
 Morel,
 
 40 Ohio St., 338;
 
 Toledo Terminal Rd. Co.
 
 v.
 
 Hughes,
 
 115 Ohio St., 562, 154 N. E., 916;
 
 Erie Rd. Co.
 
 v.
 
 Weinstein
 
 (6 C. C. A.), 116 F., 271.
 

 It must be conceded that since the train was traveling at a rate of speed in excess of 25 miles per hour, the maximum rate permitted by the ordinance, there was a violation of the speed ordinance in force in the city of Bucyrus, and such violation constituted negligence
 
 per se
 
 on the part of the defendant company. When a positive, specific and affirmative duty is enjoined by statute or odinance, the violation thereof is negligence
 
 per se,
 
 or negligence as a matter of law. Under such circumstances, the question whether the violator is guilty of negligence is not debatable. When the violation is conceded or established the court must charge, as a matter of law, that the violator is guilty of negligence
 
 (Variety Iron & Steel Works Co.
 
 v.
 
 Poak,
 
 89 Ohio St., 297, 304, 106 N. E., 24;
 
 Schell v.DuBois, Admr.,
 
 94 Ohio St., 93, 113 N. E., 664, L. R. A. 1917A, 710;
 
 Swoboda
 
 v.
 
 Brown,
 
 129 Ohio St., 512, 196 N. E., 274), and if the jury finds that the violation was the proximate cause of the injury a case is made out against the defendant.
 

 However, the fact that the defendant is chargeable with negligence
 
 per se
 
 or as a matter of law, does not preclude a defense of contributory negligence on the part of the plaintiff, and if negligence on the part of the plaintiff is established and shown to be a proximate cause of the injury of which he complains, he cannot recover.
 
 Pennsylvania Rd. Co.
 
 v.
 
 Rusynik, supra.
 

 Under these circumstances, what is the inevitable conclusion to be reached in this case? It seems to the court that no one in the exercise of due care would assume to go upon the tracks of this crossing as plaintiff’s decedent did under the situation here presented.
 
 *167
 
 Here was a 60 mile-an-hour train rushing toward him not over 240 feet away when he must have been in a place of safety 40 feet from the tracks. At his slow rate of speed he could have stopped his truck almost instantly. He proceeded, nevertheless, upon the tracks and attempted to cross over ahead of the train when it was less than three seconds away.
 

 We think it cannot be said that such conduct on his part manifested the exercise of due care, or that his conduct was not the proximate cause of his death. If the omission of due diligence in the use of his faculties of sight and hearing contributed to his injury and death, then his negligence in that respect was the proximate cause of his death; or, if by the exercise of due care he could have avoided injury and death, his failure to exercise such care was the proximate cause of his death.
 

 It has been held by this court that a driver of an automobile who, with knowledge of the existence of a railroad grade crossing, drives his automobile upon such crossing-at night and collides with a train, “is guilty of contributory negligence which justifies the direction of a verdict against him, even though automatic warning signals located at such crossing were not working, nor other warnings given by the railroad company,” although at that time there was a dense fog, it was very difficult to distinguish objects ahead, and he was unable to ascertain that there was a train on the tracks at the particular point.
 
 Toledo Terminal Rd. Co.
 
 v.
 
 Hughes, supra.
 

 This court has also held in the case of
 
 Pennsylvania Rd. Co.
 
 v.
 
 Rusynik, supra,
 
 that: “If his [driver of a motor car at a highway railroad crossing] failure to look in the direction from which a train is approaching, at a time and place when such looking would have been effective, results in an injury to himself when the same might have been avoided had he so looked, such conduct constitutes contributory negligence as a mat
 
 *168
 
 ter of law that will prevent a recovery * * * . ”
 

 Under the facts disclosed by the record in the instant case, the trial court should have directed a verdict for the defendant. The judgments of the Common Pleas Court and of the Court of Appeals are reversed, and final judgment is entered for the defendant.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Zimmerman and Matthias, JJ., concur.
 

 Williams, J., concurs in paragraphs one and two of the syllabus and in the judgment.
 

 Myers, J., not participating.