CORNETT, ADMX., ETC., APPELLEE, *v.* NEW YORK CENTRAL RAILROAD CO., APPELLANT.

Ohio Appeals, First District, Hamilton County.

No. 8596. Decided June, 1959.

■■■■■

*Messrs. Matthews & Swing* and *Mr. Archibald J. Palmer,* for appellee.

*Messrs. Davis, Farley, Bramkamp & Groneman,* for appellant.

(DOYLE, P. J., and HUNSICKER, J., of the Ninth District, and COLLIER, J., of the Fourth District, sitting by designation in the First District.)

■■■■■

HUNSICKER, J. The Ohio State Passenger Limited of the New York Central Railroad, on the morning of December 15, 1955, was due at the Union Terminal in Cincinnati at 8:35 a. m. It was a cold, snowy and windy morning in Cincinnati and its suburbs. Many streets in the suburb of Sharonville, which lies north of Cincinnati, were icy and slippery.

Railroad Avenue, which crossed the New York Central tracks in Sharonville, Ohio, was in that condition on this December day when William B. Cornett drove his milk delivery truck east along that road toward the railroad crossing. He was very familiar with this crossing, for he passed over it three times each week to make deliveries of milk.

Railroad Avenue is a short street running between Ohio State Routes 25 and 42, and it crosses the main north-south line of the New York Central at a slight incline. As one approaches the tracks going east, there is a barn on the northwest corner, and there are some bushes and trees along the

side of the barn. This barn is 33 feet from the most westerly track. At a point 9 feet west of the first of the two south-bound rails, a driver of a motor vehicle, looking to the north, can see a distance of approximately one-fourth of a mile. The evidence is conflicting as to whether one can see a greater distance at other safe places before reaching the crossing. The pictures which were admitted in evidence disclose a clear view of the tracks for a great distance to the north, even though there is a slight curve in the track as it approaches Railroad Avenue.

On the morning in question, when William B. Cornett was approaching this crossing, the Ohio State Limited, powered by two diesel locomotives, was moving south on the two westerly tracks at the excessive speed of 79 or 80 miles per hour. No bell or whistle was sounded for Railroad Avenue, when suddenly, at a distance of only 200 feet from the crossing, the engineer and fireman saw the milk truck skid onto the tracks. The inevitable collision destroyed the milk truck and killed William B. Cornett.

Mrs. Cornett, as administratrix of the estate of William B. Cornett, deceased, then filed her action in the Common Pleas Court of Hamilton County, to recover damages from the New York Central Railroad Company for the claimed wrongful death of her husband.

At the trial, only testimony for the plaintiff was introduced; whereupon counsel for the railroad made a motion in the alternative; first, for a directed verdict, and, second, to arrest the evidence from the jury. The motion to arrest the evidence from the jury was granted, and final judgment was entered for the railroad company on December 10, 1958.

On December 15, 1958, a motion for a new trial was filed by counsel for Mrs. Cornett; and on January 29, 1959, this motion for a new trial was granted.

On January 30, 1959, counsel for the railroad company filed a motion for judgment upon the evidence. This latter motion was overruled on February 11, 1959, and it is from the overruling of this motion for judgment upon the evidence that an appeal on questions of law is brought to this court.

We have detailed herein the principal points of the evidence, and in such resume we have construed the testimony most strongly in favor of the appellee, Mrs. Cornett. This court,

however, is unanimously of the opinion that reasonable minds can come to but one conclusion, which is, that William B. Cornett, the deceased, was guilty of contributory negligence as a matter of law; and that such contributory negligence was a direct and proximate cause of his death.

The duty of one who approaches a known and familiar railroad crossing has been pronounced many times in the cases reported by the Appellate Courts and the Supreme Court of Ohio.

The latest pronouncement on this subject, by the Supreme Court of Ohio, is found in *Boles* v. *Baltimore & Ohio Rd. Company*, 168 Ohio St., 551, 7 Ohio Opinions (2d), 427. The court there said:

"The driver of a motor vehicle, about to pass over a railroad grade crossing on a public street, must exercise his senses of sight and hearing to discover whether trains are also about to pass over such crossing, and such exercise of the senses must be made at such time and place as to be effective for that purpose. (*Detroit, Toledo & Ironton Rd. Co.* v. *Rohrs*, 114 Ohio St., 493, and *Patton* v. *Pennsylvania Rd. Co.*, 136 Ohio St., 159, 16 Ohio Opinions, 114, approved and followed.)"

The Court of Appeals for Lorain County, in the case of *Gigliotti* v. *New York, Chicago & St. Louis Railroad* Co., 107 Ohio App., 174, 8 Ohio Opinions (2d), 76, said, concerning the matter of a driver of a motor vehicle approaching a known railroad crossing, as follows:

"7. Where the driver of a motor vehicle, upon a public highway knowingly approaches a railway grade crossing which intersects the highway, with an intention of crossing, it is the duty of the motorist before going upon the crossing to look and listen for approaching trains, and to do so at such time, and place, and in such manner, as will be effective to warn him of the approach of trains to the crossing.

"8. The operator of a motor vehicle on a public highway who is able, before driving onto a railroad grade crossing, to see, from a place of safety, an engine approaching the crossing, but who voluntarily drives his vehicle toward the railroad crossing, the existence of which is well known to him, at a rate of speed which brings the vehicle and an approaching engine to

the crossing at the same time, resulting in a collision, is guilty of negligence which is a proximate cause of damage as a matter of law.''

We realize that Railroad Avenue, at the crossing herein, was slippery because of ice and snow on the highway. This condition was general in that community for several hours prior to the accident, and surely was well known to Mr. Cornett. Other drivers on that highway immediately after the accident were required to drive at a speed of five miles per hour, and yet the testimony is that Mr. Cornett skidded on this incline approach into the path of the speeding train.

We think that the rule announced in the case of *Baltimore & Ohio Railroad Co.* v. *McClellan, Admx.*, 69 Ohio St., 142, should apply in the instant case, although in our case, now under consideration, the day was not cloudy, and except for the slippery road there was nothing unusual about the approach to the crossing, and a view of the track from a place of safety was not obscured. In the *McClellan case, supra*, the court said:

"1. The rule that a person in full possession of his senses of sight and hearing should exercise them to protect himself from danger when about to cross a known track of a steam railroad at a street crossing, applies to a condition where the atmosphere is more or less clouded by steam and smoke, and it is negligence on his part which will defeat a recovery for injuries received from a passing train to undertake to cross without waiting for the atmosphere to clear so that his vision may be unobstructed, or taking other adequate means to ascertain the presence of danger.''

For the reasons herein stated, we conclude that the trial judge erred to the prejudice of the appellant, New York Central Railroad Company, when he overruled the motion for judgment upon the evidence.

It is therefore the determination of this court that the judgment of the trial court should be reversed, and final judgment must be rendered for the appellant herein.

Judgment reversed and final judgment awarded the appellant.

DOYLE, P. J., and COLLIER, J., concur.