OPINION
This is an accelerated calendar appeal submitted to the court on the briefs of the parties. Appellant, Carl A. Barile, appeals from the judgment of the Lake County Court of Common Pleas granting appellees, East End Land Development ("East End"), Thomas Riebe ("Riebe"), and Reno Cappelli ("Cappelli"), summary judgment. For the reasons that follow, we affirm the judgment of the trial court.
The following facts are pertinent to this appeal. On December 19, 1995, appellant and his ex-wife, Mary Jane Barile ("Barile"), signed a purchase agreement selling their home to appellee East End, a company in which appellee Riebe was president and appellee Cappelli was vice-president. Appellant and Barile subsequently executed a deed in favor of East End on March 26, 1996.
The purchase agreement provided that Barile and her children could remain at the residence rent-free for a period of up to sixty days after the closing date of the transfer of the property. If Barile remained in the home after the expiration of the sixty days, she would be charged $15 per day rent for the continued tenancy.
There is no dispute that appellant and Barile were responsible for the maintenance of the premises prior to the closing. However, there is a disagreement over who was responsible for the upkeep after the sale became final. Both appellant and Barile testified in their depositions that they were under the impression that East End would provide the necessary upkeep on the property during the time between the closing and when Barile and the children moved out of the home. At the same time, appellees believed that appellant and Barile would perform any needed repairs to the house or property.[1]
The purchase agreement itself was silent as to the upkeep of the premises. In fact, the only responsibility assigned to appellant and Barile relating to the property was paying the utilities until the premises was vacated. No written lease agreement was ever entered into by the parties.
In her deposition, Barile indicated she first noticed a problem with the garage door approximately one week before appellant's accident. On May 17, 1996, the Friday before the accident, Barile called East End's office and left a message for appellee Cappelli to call her. Barile did not give a reason for the call.[2]
It is undisputed that Barile did not receive a return call from appellees until after appellant's accident.
On Sunday, May 19, 1996, appellant brought his and Barile's son home from baseball practice. While at the home, Barile asked appellant if he would look at the garage door to see if he could possibly fix the problem. Appellant entered the garage from a back door. Upon examination of the garage door, appellant noticed that a cable on the left side had snapped. While attempting to remove a metal bracket from the garage door, appellant suffered severe injuries to his face and neck when the bracket violently sprung off the door.
On January 24, 1997, appellant filed a complaint against appellees for the injuries he suffered in the accident. Appellant's complaint was based on the alleged failure of appellees to keep the premises in a fit and habitable condition. Over appellant's objection, the trial court granted appellees' motion for leave to file a motion for summary judgment instanter on April 27, 1998. Appellant filed a brief in opposition to summary judgment on May 8, 1998. Appellees filed a reply brief on May 13, 1998.
On June 2, 1998, the trial court granted appellees' motion for summary judgment, finding an absence of any genuine issue of material fact as to appellees' lack of notice regarding the damaged garage door. Appellant perfected a timely appeal and asserts the following assignment of error for our consideration:
 "The trial court erred in granting appellees' motion for summary judgment as there exist genuine issues of material fact."
Initially, we note that summary judgment is proper when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C);Leibreich v. A.J. Refrigeration, Inc. (1993), 67 Ohio St.3d 266,268.
Material facts are those facts which might affect the outcome of the suit under the governing law. Turner v. Turner (1993),67 Ohio St.3d 337, 340, citing Anderson v. Liberty Lobby, Inc.
(1986), 477 U.S. 242, 248. To determine what constitutes a genuine issue, the court must decide whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. Turner at 340.
Moreover, a party seeking summary judgment on the grounds that the nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential elements of the nonmoving party's claims. Dresher v. Burt (1996),75 Ohio St.3d 293 [75 Ohio St.3d 280]. The moving party must be able to point specifically to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claim. Id.
If the moving party meets its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden to respond, by affidavit or as otherwise provided in the rule, in an effort to demonstrate that there is a genuine issue of fact suitable for trial. Id. If the nonmoving party fails to do so, then the trial court may enter summary judgment against the party.Id. An appellate court applies a de novo standard of review when determining whether a trial court properly granted summary judgment. Lake Cty. Gen. Health Dist. v. Quirk (May 14, 1999), Lake App. No. 98-L-107, unreported, at 2, 1999 WL 315402.
In his sole assignment of error, appellant sets forth four reasons in support of why summary judgment was not appropriate in the case at bar. First, appellant argues that the uncontroverted evidence demonstrated that appellees had violated R.C. 5321.04(A), and as a result, the failure to comply with the statute is negligence per se.[3] Second, appellant maintains that the trial court incorrectly found that appellant failed to provide appellees with notice of the defective garage door. Third, appellant contends that the issue of a witness's credibility should be determined by the trier of fact and not disposed of in summary judgment. Finally, appellant argues that summary judgment was inappropriate because a genuine issue of material fact exists as to whether appellees knew or should have known of the garage door's condition.
In the instant matter, there is no actual rental agreement perse between Barile and East End designating the responsibilities of the respective parties. However, neither party contests the fact that a landlord/tenant relationship existed. The terms of the purchase agreement allowed Barile and her children to stay in the home rent-free for up to sixty days following the closing of the sale. Furthermore, the purchase agreement also provided that, in the event Barile was still in the house at the end of the sixty days, she was obligated to pay $15 per day rent.[4]
As a result of the relationship between the parties, East End had certain obligations under R.C. 5321.04 relating to the upkeep of the property. Under early common law, a landlord generally was immune from tort liability for any injuries sustained by any person on a leased premises in the exclusive possession of a tenant. Shump v. First Continental-Robinwood Assoc. (1994),71 Ohio St.3d 414, 418. Now, a landlord's liability to a tenant is determined by a landlord's common law immunity from liability and any exceptions to that immunity that a court or a legislative body has created. Id.
One of those exceptions is found in the Supreme Court of Ohio's decision in Shroades v. Rental Homes, Inc. (1981), 68 Ohio St.2d 20. In Shroades, the court stated:
 "R.C. 5321.04 imposes duties on the landlord to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. Furthermore, the purpose of the statute is to protect persons using rented residential premises from injuries. A violation of a statute which sets forth specific duties constitutes negligence per se. Schell v. DuBois
(1916), 94 Ohio St. 93; Patton v. Pennsylvania R.R. Co. (1939), 136 Ohio St. 159; Grieser v. Huntington Natl. Bank (1964), 176 Ohio St. 291. However, in addition to negligence per se, proximate cause for the injuries sustained must be established. Schell and Patton, supra. Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord." Shroades at 25-26. See, also, Hodge v. Lackey (May 12, 1995), Trumbull App. No. 93-T-4947, unreported, 1995 WL 378700.
Thus, Shroades sets forth three specific and independent requirements which must be met before a landlord can be liable for injuries sustained on rental premises. First, if a landlord violates a statutorily imposed duty, such as failing to keep the premises in a habitable condition, he/she is negligent per se. However, the tenant must still show that the landlord's violation was the proximate cause of the injuries and that the landlord had received notice of the defective condition, or that he knew of the defect, or that reasonable, but unsuccessful, efforts were made to notify the landlord of the problem.[5]
Appellant's first argument, that the trial court ignored the effect of appellees' conduct as negligence per se, is unfounded. Assuming that appellees' conduct at issue in this case, i.e., a failure to mow the lawn, was a violation of R.C. 5321.04, appellant still was required to prove that appellees "received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that [Barile] had made reasonable, but unsuccessful, attempts to notify [appellees]," and that the injury was proximately caused by the violation. Shroades at 26.[6] As a result, appellant's argument that appellees' purported negligence per se, standing alone, mitigated against summary judgment is unpersuasive because the trial court ultimately found that appellees were unaware of the defective garage door.
In regards to whether appellees knew of the defective garage door, we conclude that the uncontroverted evidence demonstrates that they did not know of the dangerous condition until after appellant's accident. Appellant offered no evidence showing that if appellees had inspected the premises, the defect would have been discovered. Barile testified that she noticed the problem only about one week before the accident. She further testified that even if appellees had looked at the door from outside they may not have noticed anything wrong. Moreover, appellant and Barile had never had a problem with the door in the past and had never requested that appellees make any other repairs to the house. Thus, we conclude that the trial court properly found that appellees did not receive notice of the defect and that they lacked actual knowledge of the defect.
Furthermore, we also conclude that appellant failed to provide evidence that sufficient efforts were made to apprise appellees of the problem. In her deposition, Barile testified that she called East End at 6:00 p.m. on the Friday before the accident and left a message for appellee Cappelli to call her. In her message, Barile never stated the reason for the call nor did she say that it was an emergency that someone return her call as soon as possible.
The only other time during her deposition that Barile mentioned another call to East End was when she mentioned the possibility that she called on the Saturday before the accident. Barile testified that:
 "I contacted — well, in fact, I did not speak with a person. I tried calling on one occasion — I believe it was on Friday — and got a recording. I left my name and number, and I believe I might have called them back on Saturday, but I'm not — I know I left my name and number on the one day — and I'm pretty sure that was Friday evening — asking that Mr. Cappelli give me call." (Emphasis added.)
However, later in her deposition, the following exchange occurred:
 "Q. So you called on Friday evening, which would have been, I guess, the 17th?
"A. I don't have a calendar, so yes.
 "Q. Carl got hurt on the 19th. That was a Sunday. So Friday would have been the 17th.
 So you called Friday evening, the 17th, after six p.m., and you leave your name and your number on the answering machine?
"A. Yes.
 "Q. Did you leave anything else on the answering machine about why you were calling?
 "A. No. I just asked to have Mr. Cappelli call Mary Jane Barile.
 "Q. Were you given any other numbers to contact anyone from East End Land Company besides that office number?
"A. No.
 I think I — I always spoke with him through the office.
 "Q. And you said you tried to get ahold of him on Saturday?
 "A. I don't remember if I did or not. I know — that's why I'm trying to remember if it was Friday or — I'm positive it was Friday night where I left my name and number. Saturday I don't think I tried to call, because I assumed he would call back."
As shown, Barile clearly testified that the only time she positively called East End regarding the garage door was the Friday before appellant's accident. More importantly, no mention was ever made of an earlier call. Although Barile was somewhat confused earlier in her testimony about the number of times she called East End, whether once or twice, she eventually testified that she positively called on Friday and that she did not call on Saturday because she assumed appellee Cappelli would return her call.
Despite Barile's deposition testimony, however, appellant submitted an affidavit from Barile with his brief in opposition to summary judgment. In that affidavit, Barile claimed that prior to the accident she had left three messages with East End concerning the garage door; to wit, one on Monday, one on Friday, and one on Saturday. This affidavit, however, was in direct contradiction to her prior testimony.
In addition Barile, in effect, recanted another portion of her prior testimony when she claimed that she would have to wait days or weeks to receive a return phone call from appellees. This statement was in direct conflict with her deposition, in which she testified that appellee Cappelli had promptly returned her phone calls in the past.
Barile's affidavit statements go directly to the issue of whether appellees were put on notice of the defect or whether reasonable efforts were made to contact appellees about the condition of the garage door. Furthermore, Barile's affidavit directly contradicts her deposition testimony in several respects. This contradiction led the trial court to disregard Barile's affidavit when determining that appellees were entitled to summary judgment
In Bowen v. Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 88, the Supreme Court of Ohio noted in dicta that "the court of appeals clearly erred in ignoring portions of [an] affidavit which were favorable to [the non-movant] solely because of some perceived discrepancy between the affidavit and * * * earlier deposition testimony." However, after carefully reviewing the record before it, the court determined that there actually was no discrepancy between the deposition and the affidavit in question. As a result, the court decided that there was no need to resolve the conflict between the holding of the lower courts in Bowen v. Kil-Kare, Inc. (Aug. 24, 1990), Greene App. No. 89 CA 84, unreported, 1990 WL 121878 andSwift v. Two Hundred Place (Nov. 13, 1986), Cuyahoga App. No. 51320, unreported, 1986 WL 12867.
In a subsequent decision, the Supreme Court of Ohio held that summary judgment was inappropriate in favor of the movant when he files an affidavit that contradicts his prior testimony because, by his own act, he has created an issue of fact. Turner, 67 Ohio St. 3d at paragraph one of the syllabus. The court based its decision on the logic that when a movant submits conflicting evidence in support of summary judgment, the issue of the movant's credibility is a question that must be resolved by the trier of fact. Id.
Since Bowen and Turner were decided, some appellate courts have held that because evidence in a summary judgment exercise must be construed in a light most favorable to the non-moving party, the non-moving party's contradictory affidavit and deposition can create a genuine issue of material fact sufficient to defeat a motion for summary judgment. See K-Swiss, Inc. v. Cowens SportsCenter, Inc. (Nov. 8, 1995), Greene App. No. 95-CA-48, unreported, at 15, 1995 Ohio App. LEXIS 4957; Williamson v. Gastro-IntestinalAssoc., Inc. (Sept. 13, 1993), Allen App. No. 1-93-34, unreported, at 5-6, 1993 Ohio App. LEXIS 4435; OTR v. Newmarket Assoc., Ltd.
(Nov. 4, 1993), Stark App. No. 9354, unreported, at 8, 1993 Ohio App. LEXIS 5491; Musial v. The Tamarkin Co. (Sept. 1, 1994), Mahoning App. No. 93 C.A. 40, unreported, at 3, 1994 Ohio App. LEXIS 3916; Aglinsky v. Cleveland Builders Supply Co. (1990),68 Ohio App.3d 810, 816-817; Wivitowicz v. Eschtruth (Apr. 17, 1996), Lorain App. No. 95CA006203, unreported, at 4-5, 1996 WL 183111.
On the other hand, other appellate courts, including this one, have held that a non-moving party may not defeat a motion for summary judgment by filing an affidavit conflicting with the affiant's prior deposition testimony. See Pain Ent., Inc. v.Wessling (Mar. 22, 1995), Hamilton App. No. C-930888, unreported, at 4, 1995 WL 121459; Steiner v. Steiner (July 12, 1995), Scioto App. No. 93CA2191, unreported, at 3, 1995 WL 416941; Schaeffer v.Lute (Nov. 22, 1996), Lucas App. No. L-96-045, unreported, at 3-15, 1996 Ohio App. LEXIS 5166; McCain v. Cormell (June 30, 1994), Trumbull App. No. 93-T-4967, unreported, at 2, 1994 WL 320915; Capital Financial Serv., Inc. v. Hibbard (Oct. 9, 1995), Butler App. No. CA95-04-079, unreported, at 5, 1995 WL 591247.
We choose to follow our precedent and hold that a non-moving party cannot defeat a motion for summary judgment by submitting an affidavit which without explanation, directly contradicts his/her previous deposition testimony. As we noted in McCain, if it is inappropriate to grant summary judgment in favor of a person who submits an affidavit which contradicts the affiant's earlier testimony per Turner, "[i]t would be equally inappropriate to allow an opposing party to defeat a motion for summary judgment by creating an issue of fact through a contradictory affidavit." [Emphasis sic.] McCain at 2.
Moreover, there is no logical reason to allow a person who has been examined in deposition to raise an issue of fact simply by submitting an affidavit which contradicts his/her earlier testimony. Parties to litigation should not be allowed to thwart the purpose of Civ.R. 56 by creating issues of fact. If this were permitted, the utility of summary judgment as a valuable procedure for screening out sham factual issues would be greatly undermined.Franks v. Nimmo (C.A.10, 1986), 796 F.2d 1230, 1237.
In addition, our position is consistent with the overwhelming majority of federal circuit courts which have addressed this issue. Cleveland v. Policy Mgt. Sys. Corp. (1999), 119 S.Ct 1597,1604. See, also, Colantuoni v. Alfred Calcagni Sons, Inc.
(C.A.1, 1994), 44 F.3d 1, 5; Rule v. Brine, Inc. (C.A.2, 1996),85 F.3d 1002, 1011; Hackman v. Valley Fair (C.A.3, 1991),932 F.2d 239, 241; Barwick v. Celotex Corp. (C.A.4, 1984), 736 F.2d 946,960; Albertson v. T. J. Stevenson Co. (C.A.5, 1984),749 F.2d 223, 228; Davidson Jones Development Co. v. Elmore Dev. Co.
(C.A.6, 1991), 921 F.2d 1343, 1352; Slowiak v. Land O'Lakes, Inc.
(C.A.7, 1993), 987 F.2d 1293, 1297; Camfield Tires, Inc. v.Michelin Tire Corp. (C.A.8, 1983), 719 F.2d 1361, 1365-1366;Kennedy v. Allied Mut. Ins. Co. (C.A.9, 1991), 952 F.2d 262, 266;Franks v. Nimmo (C.A.10, 1996), 796 F.2d 1230, 1237; Tippens v.Celotex Corp. (C.A.11, 1996), 805 F.2d 949, 953-954; Pyramid Sec.Ltd. v. IB Resolution, Inc. (C.A.D.C. 1991), 924 F.2d 1114, 1123;Sinskey v. Pharmacia Ophthalmics, Inc. (C.A.F.C. 1992),982 F.2d 494, 498.
In Cleveland, the United States Supreme Court, while not directly addressing the issue, noted that:
 "The lower [federal] courts * * * have held with virtual unanimity that a party cannot create a genuine issue of fact sufficient to survive summary judgment by contradicting his or her own previous sworn statement (by, say, filing a latter affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland
at 1604.
Our conclusion here is not meant to act as an absolute bar to a trial court's consideration of every contradictory affidavit filed in opposition to summary judgment. For example, an exception is recognized in situations where the affiant can provide a legitimate reason for the conflict, such as confusion or a lack of access to the material facts. Williams v.American Mut. Life Ins. Co. (Dec. 6, 1996), Trumbull App. No. 96-T-5478, unreported, at 4, 1996 WL 760908, citing Bulishak v. Finast Supermarkets (Mar. 19, 1992), Cuyahoga App. No. 62301, unreported.
In the case at bar, appellant attempts to distinguish McCain by arguing that Barile's affidavit was merely an elaboration of her deposition testimony and not a recantation of that prior testimony. In addition, appellant argues that his attorney had no opportunity during Barile's deposition to ask her to further discuss attempts to contact appellees.
As to appellant's argument that Barile's affidavit was merely an elaboration of her prior testimony, we disagree. During her deposition, Barile was adamant that she had called East End on the Friday before the accident. Moreover, her testimony also shows that she was unsure as to whether she made a second call the next day. However, despite confusion concerning the Saturday call, Barile never mentioned the possibility that she had called the Monday before appellant's accident. As a result, appellant's contention that Barile's affidavit was merely an elaboration of her testimony given at deposition is without merit because she never mentioned a Monday call at that time.
At most, the only portion of Barile's affidavit relating to the number of calls appropriate for the trial court to consider would be her claim that she had called the Saturday before the accident. However, the fact that she may have called on both Friday and Saturday does not change our determination that sufficient efforts were not made to notify appellees of the garage door's condition.
Furthermore, appellant's argument that his attorney never had the opportunity to ask Barile to elaborate on her answers at the deposition is without merit. If appellant's attorney wished to clarify the notice issue, he could have taken the opportunity at a later time to depose Barile for the purpose of asking her whatever questions he deemed appropriate to demonstrate that she had made reasonable, but unsuccessful, attempts to notify appellees of the defect on an earlier occasion. Filing an affidavit contradicting the unambiguous testimony of a witness is inappropriate and will not be permitted without adequate explanation.
In the alternative, appellant argues that if Barile's affidavit is inconsistent with her prior deposition testimony, the issue of Barile's credibility is a matter for the trier of fact. In support, appellant cites to several of the cases noted above from other courts which hold that if a non-moving party files a brief in opposition to summary judgment containing an affidavit contradicting earlier testimony, the credibility of the non-moving party is an issue that should be resolved by the trier of fact and summary judgment is not appropriate.
Because we have decided otherwise, McCain and Williams, supra, appellant's argument is unpersuasive and the trial court's exclusion of the affidavit was appropriate. Barile's affidavit neither suggests that she was confused at her deposition nor offers a reason for the direct contradiction of her unambiguous prior testimony.
Taking all of the uncontroverted evidence into consideration and viewing it in a light most favorable to appellant, we conclude that appellant failed to provide sufficient evidence demonstrating that appellees either knew of the defective garage door, or that sufficient efforts were made to inform appellees of the problem. As a result, summary judgment was appropriate because appellant failed to meet his burden under Shroades, supra.
For the foregoing reasons, appellant's assignment of error is without merit. As a result, the judgment of the trial court is affirmed.
FORD, P.J., NADER, J., concur.
[1] The City of Mentor issued appellee East End several citations for housing violations with regard to the property in question and several adjoining properties. However, these citations were issued after the relevant events of the case at bar took place. As a result, they have no bearing on the outcome of our decision.
[2] In her affidavit, however, Barile stated that she had left a message for Cappelli concerning the garage door on the following days: on the Monday before the accident; on the above-mentioned Friday; and on the Saturday immediately preceding the accident.
[3] R.C. 5321.04 states in pertinent part:
 "(A) A landlord who is a party to a rental agreement shall:
"* * *
 "(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition[.]"
[4] In her affidavit, Barile claims that she paid a total of $810 to appellees for rent. Appellees never disputed this claim.
[5] We note that, although appellant was not living at the home at the time of the accident, "[a] landlord owes the same duties to persons lawfully upon the leased premises as the landlord owes to the tenant." Shump at syllabus.
[6] According to appellant, appellees were negligent because they allegedly failed to mow the lawn. Appellant argues that if appellees would have taken appropriate steps to cut the grass, the defective garage door would have been discovered. However, whether or not appellees violated R.C. 5321.04 by failing to mow the lawn is immaterial to our final determination of this case. As a result, we will not address the issue of appellees' alleged negligence or whether it was the proximate cause of appellant's injuries.