OPINION
{¶ 1} Plaintiffs-appellants, Juanita M. Lilly ("Juanita"), Leroy Lilly, and Lonnie Lilly ("Lonnie") (collectively "appellants"), appeal from the judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Bradford Investment Company, Kitch II, LLC, and Bill Kitchen ("Kitchen") (collectively "appellees"), and to deny appellants' partial summary judgment motion in regards to appellees' counterclaim. For the following reasons, we affirm. *Page 2 
 {¶ 2} Appellants filed a complaint against appellees claiming negligence, statutory violations, breach of contract, and failure to warn. Appellants also claimed loss of consortium to Juanita's husband, Leroy Lilly, and Juanita's adult son, Lonnie. Appellants alleged the following. On February 5, 2004, Juanita was a tenant of a residence at 3853 Fergus Road, Columbus, Ohio, that was "owned, managed and/or maintained" by appellees. That day, Juanita "walked down the stairs into the basement" of her rental residence "at which time the stair case rails separated causing the stair treads to collapse and [Juanita] to fall, severely breaking her ankle." In response, appellees filed a counterclaim, asserting that appellants breached the rental contract by failing to "maintain the premises and grounds in a safe, clean and sanitary condition at all times and failing to provide [appellees] with notice of any need for repair."
 {¶ 3} Thereafter, appellants filed a copy of Kitchen's deposition. Kitchen testified to the following. In October 2003, Kitchen signed a purchase contract for the Fergus Road residence. The contract allowed Kitchen ten days to have the property inspected. Kitchen walked through the property one time before signing the purchase contract. Before Juanita's February 2004 accident, Kitchen had not been aware of any repairs made to the staircase that led to the basement of the Fergus Road residence.
 {¶ 4} Next, Kitchen admitted that, while he is not a "professional inspector," he should "review" property before renting it to tenants. (Kitchen Depo. at 32.) Kitchen also provided the following testimony:
 Q. * * * Do you believe that you are qualified to inspect the architectural, structural, mechanical, and electrical elements of your rental properties?
 A. I'm not an inspector, I'm not an engineer and so forth. So, I'm not sure — I'm not a professional inspector. *Page 3 
 * * *
 Q. Did you hire a qualified home inspector to look at the [Fergus Road] property?
 A. No, I didn't.
 * * *
 Q. Is there a reason you did not? Was it cost savings or did you feel qualified to do it yourself or neither of those?
 A. I look at property, and — as to whether or not the property needs repairs, and I do the repairs.
 Q. Do you feel you have sufficient knowledge and expertise to perform an inspection?
 A. Define inspection.
 Q. An inspection of a rental property you're going to rent to somebody to insure that it is safe for the perspective tenants?
 A. I look at properties and make necessary repairs and so forth. So I guess I do qualify myself to that extent.
(Kitchen Depo. at 35, 39-40.)
 {¶ 5} Kitchen then testified to the following. Appellants began renting the Fergus Road residence in January 2004. Kitchen walked through the Fergus Road property before he rented the property to them. Kitchen "looked" at the staircase that led into the basement, and he walked up and down the staircase. (Kitchen Depo. at 42.) The staircase "felt okay" to him. (Kitchen Depo. at 42.)
 {¶ 6} Kitchen also testified to the following:
 Q. Do you feel qualified to perform an inspection on a staircase? *Page 4 
 A. Again, I'm not an inspector, so I didn't inspect — I'm not an inspector.
 Q. Did you feel it would be important to have a qualified inspector inspect the staircase?
 A. I didn't see a problem with the staircase.
(Kitchen Depo. at 43.)
 {¶ 7} Lastly, Kitchen testified to the following. On the day of or the day after the February 5, 2004 accident, Kitchen went to the Fergus Road residence. Lonnie showed Kitchen the repairs he made to the staircase after the accident, and Lonnie made no suggestion that a professional carpenter look at the staircase.
 {¶ 8} Appellants filed a motion for partial summary judgment as to appellees' counterclaim. Appellants asserted that the parties' rental contract unlawfully terminated appellees' statutory duty to maintain the rental premises.
 {¶ 9} Appellees filed a motion for summary judgment on appellants' claims. Appellees attached to the summary judgment motion a copy of Juanita's and Lonnie's depositions.
 {¶ 10} Lonnie testified to the following in his deposition. Appellants began renting the Fergus Road residence from appellees in the middle of January 2004. Before appellants rented the residence from appellees, Kitchen and Lonnie "did a walk-through of the property" going from "room to room" and making a "visual inspection[.]" Lonnie did not notice anything that concerned him, and Lonnie did not make any repair requests to Kitchen. When making the visual inspection, Lonnie did not look at the stairway going into the basement. Likewise, Lonnie did not know whether anyone repaired the basement stairs of the residence before the February 2004 accident. In *Page 5 
addition, Lonnie did not report to appellees problems with the stairs before the accident, and did not notice problems with the stairs before the accident.
 {¶ 11} Juanita testified to the following in her deposition. Juanita did not inspect the Fergus Road residence before renting it from appellees. Likewise, Juanita was not aware of whether anyone repaired the basement stairs of the residence before her February 2004 accident. In addition, Juanita did not report to appellees problems with the stairs before the accident, and did not notice problems with the stairs before the accident.
 {¶ 12} Juanita also testified about the February 2004 accident:
 * * * We were getting ready to leave the house to go to the grocery store, and I needed to use the bathroom. So I went downstairs. And when I got down to the next to the last step, it just collapsed underneath my foot, my left foot. And it pulled it under the step, and I couldn't get it loose.
 I kept calling for my husband to come down. He was out on the porch. And finally he heard me and he came downstairs. Well, he held the board out till I got my foot out, and then I tried crawling up the steps. I couldn't hardly crawl up the steps it was so painful, but I did make it into the living room.
 {¶ 13} Appellants filed a memorandum in response to appellees' summary judgment motion, which contained an affidavit from construction consultant David E. Wickline, Jr. In the affidavit, Wickline stated the following. On January 31, 2005, Wickline inspected the staircase that broke during the February 2004 accident. "[T]he staircase stringer and steps had previously separated and were improperly and negligently repaired, prior to the failure on February 5, 2004; * * * a professional home inspection of the premises, which always includes the stairs * * * would have disclosed the prior improper and negligent repair; * * * Mr. Kitchen would have known of the *Page 6 
improper repair, if he adequately inspected the staircase; * * * as a result of [appellees'] failure to adequately inspect the staircase, Juanita Lilly was injured when the bottom two stair treads collapsed[.]"
 {¶ 14} On July 25, 2006, the trial court denied appellants' motion for partial summary judgment as to appellees' counterclaim, and the trial court granted summary judgment in favor of appellees. In granting summary judgment in favor of appellees, the trial court noted that appellants failed to provide appellees notice of the defective staircase. In its decision, the trial court referenced Juanita's accident as occurring in February 2006, and not February 2004, as the evidence established.
 {¶ 15} On August 9, 2006, appellants filed a motion for reconsideration, noting that the trial court considered the wrong date of Juanita's accident. On September 28, 2006, the trial court denied the motion for reconsideration, stating:
 Though the Court referenced the length of time that it mistakenly believed [appellants] occupied the residence, it was in no way crucial to the Court's decision. Regardless of the length of time that [appellants'] occupied the premises, [appellees] still lacked notice.
 {¶ 16} Accordingly, on September 28, 2006, the trial court issued a judgment entry denying appellants' partial motion for summary judgment as to appellees' counterclaim and granting summary judgment in favor of appellees. Subsequently, on November 14, 2006, the trial court granted appellees' Civ.R. 41(A) motion to voluntarily dismiss without prejudice their counterclaim.
 {¶ 17} Appellants appeal, raising four assignments of error:
 FIRST ASSIGNMENT OF ERROR:
 The trial court erred in denying partial summary judgment in favor of Plaintiff-Appellant by not finding that the terms of the *Page 7 
residential lease which formed the basis of Defendants-Appellees were unconscionable, illegal and an abrogation of the Ohio's Landlord and Tenant Act, as set forth in R.C. § 5321, et. seq.
 SECOND ASSIGNMENT OF ERROR:
 The trial court erred in granting summary judgment in favor of the Defendants-Appellees by requiring actual notice to Defendants-Appellees of the hazard or defect, when said defect is latent and when an adequate inspection of the premises by the Landlord would have discovered the defect or hazard.
 THIRD ASSIGNMENT OF ERROR:
 The trial court erred in granting summary judgment in favor of the Defendants-Appellees by failing to hold that Landlord had a duty to adequately inspect their recently purchased premises, before offering for tenants' occupancy, pursuant to their common law duties and the statutory duties required by R.C. 5321.04.
 FOURTH ASSIGNMENT OF ERROR:
 The trial court erred in granting summary judgment in favor of Defendants-Appellees by failing to find that there exists genuine issues of material fact as to whether Defendants-Appellees complied with their common law duties and their statutory duties required by R.C. 5321.04.
 {¶ 18} In their first assignment of error, appellants contend that the trial court erred in denying their motion for partial summary judgment on appellees' counterclaim. However, the trial court granted appellees' Civ.R. 41(A) motion to voluntarily dismiss the counterclaim. A voluntary dismissal nullifies claims and leaves the parties as if the claims were never filed. See Denham v. New Carlisle (1999), 86 Ohio St.3d 594, 596;Ohio Leitina Co. v. City of Cleveland (June 22, 2000), Cuyahoga App. No. 76441; Gruenspan v. Thompson (Oct. 12, 2000), Cuyahoga App. No. 77276. Accordingly, here, no action has survived on appellees' counterclaim, and we have nothing to review on *Page 8 
appellants' motion for partial summary judgment on appellees' counterclaim. See Ohio Leitina Co. Therefore, we dismiss appellants' first assignment of error.
 {¶ 19} We next address appellants' second, third, and fourth assignments of error, in which appellants assert that the trial court erred by granting summary judgment in favor of appellees. We disagree.
 {¶ 20} Appellate review of summary judgments is de novo. Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588, citing Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v. Bank One Columbus, N.A. (1992),83 Ohio App.3d 103, 107; Brown at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 21} Pursuant to Civ.R. 56(C), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one *Page 9 
conclusion, that conclusion being adverse to the non-moving party.Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66.
 {¶ 22} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996), 75 Ohio St.3d 280,292. Once the moving party meets its initial burden, the non-movant must set forth specific facts demonstrating a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 358-359, quoting Norris v. Ohio Std. Oil Co. (1982),70 Ohio St.2d 1, 2.
 {¶ 23} Here, we initially note that residential landlords must maintain their rental premises in compliance with R.C. 5321.04(A), Ohio's Landlord Tenant Act. In challenging the trial court's decision to grant summary judgment in appellees' favor, appellants claim that, inRobinson v. Bates, 112 Ohio St.3d 17, 2006-Ohio-6362, the Ohio Supreme Court held that a jury question stems from "whether a landlord exercised reasonable diligence and care or instead breached the statutory duty" of the Landlord Tenant Act. Robinson concerned a tenant's claim against a landlord based on a landlord's alleged negligence in making repairs. Id. at ¶ 2-3. However, contrary to appellants' suggestion, the Ohio Supreme Court did not hold in Robinson that all claims against a landlord for breach of a landlord's statutory duty must be submitted to a jury. Rather, the Ohio Supreme Court examined the record before it and concluded that, *Page 10 
"[f]rom the testimony, it is clear that a jury should have been allowed to consider whether [the landlord] exercised reasonable diligence and care in [a repair] * * * or instead breached her statutory duty to repair." Id. at ¶ 24.
 {¶ 24} Appellants also assert the application of R.C. 5321.04(A)(3), which requires a landlord to "[k]eep all common areas of the premises in a safe and sanitary condition[.]" However, appellants' case concerns a staircase under appellants' control inside the rented residence and does not fall within the purview of a "common area," which generally refers to areas on a landlord's property like "sidewalks, parking lots, foyers, and hallways which were under the control of the lessor[.]" See Hau v.Gill (July 14, 1999), Lorain App. No. 98CA007061. Thus, R.C.5321.04(A)(3) and related case law are inapplicable here.
 {¶ 25} Rather, we note the applicability of R.C. 5321.04(A)(2), which states:
 (A) A landlord who is a party to a rental agreement shall do all of the following:
 * * *
 (2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition[.]
 {¶ 26} In Shroades v. Rental Homes (1981), 68 Ohio St.2d 20, 25-26, the Ohio Supreme Court analyzed R.C. 5321.04(A)(2), stating:
 [The statute] imposes duties on the landlord to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. * * * A violation of a statute which sets forth specific duties constitutes negligence per se. Schell v. DuBois (1916), 94 Ohio St. 93, 113 N.E. 664; Patton v. Pennsylvania R. R. Co. (1939), 136 Ohio St. 159, 24 N.E.2d 597; Grieser v. Huntington Natl. Bank (1964), 176 Ohio St. 291, 199 N.E.2d 556. However, in addition to negligence per se, proximate cause for the injuries sustained *Page 11 
must be established. Schell and Patton, supra. Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord.
 {¶ 27} In Sikora v. Wenzel (2000), 88 Ohio St.3d 493, 498, the Ohio Supreme Court clarified Shroades, stating:
 We hold, therefore, that a landlord's violation of the duties imposed by R.C. * * * 5321.04(A)(2) constitutes negligence per se, but a landlord will be excused from liability * * * if he neither knew nor should have known of the factual circumstances that caused the violation. (Shroades v. Rental Homes, Inc. [1981], 68 Ohio St.2d 20, 22 O.O.3d 152, 427 N.E.2d 774, clarified.) To the extent that Shroades was ambiguous as to the source and nature of the notice requirement applicable to a violation of a statute imposing negligence per se, we clarify that standard by our decision here.
 {¶ 28} Appellants recognize the applicability of Shroades andSikora here, and assert that, pursuant to these cases, appellees should have known about the defective staircase because, based on Wickline's affidavit, a professional inspector would have discovered the defect. In making this argument, appellants assert that appellees should be held to the standard of care that a property owner owes to invitees. An invitee is a person who comes upon the premises of another, by express or implied invitation, for some purpose that is beneficial to the owner of the premises. See Provencher v. Ohio Dept. of Transp. (1990),49 Ohio St.3d 265, 266. The owner or possessor of a premises owes a duty to his invitees to exercise ordinary, reasonable care in the maintenance of the premises and to warn the invitee of latent defects the owner has or should have knowledge of. Baldauf v. Kent State Univ. (1988),49 Ohio App.3d 46, 47-48; Zuzan v. Shutrump, 155 Ohio App.3d 589,2003-Ohio-7285, at ¶ 6. We reject appellants' *Page 12 
contention, however, because, "with regard to areas within the exclusive possession of a tenant," including a staircase inside a rented residence, "the common-law classifications [of trespasser, licensee, and invitee] do not affect the legal duty that a landlord owes a tenant[.]" (Emphasis omitted.) See Shump v. First Continental-Robinwood Assoc.
(1994), 71 Ohio St.3d 414, 417.
 {¶ 29} In this regard, appellants provide no precedence requiring a landlord to take affirmative action to hire professional inspectors to discover defects in a tenant's residence to satisfy R.C. 5321.04(A)(2), and we fail to impose such a duty in absence of such precedence. Indeed, in Boyd v. Hariani, Summit App. No. 22500, 2005-Ohio-4536, at ¶ 32, the Ninth District Court of Appeals noted that neither Shroades norSikora:
 * * * [M]entions an affirmative duty to inspect on the part of the landlord. Both cases, and more importantly, Sikora, focus specifically on whether the landlord had actual or constructive notice of the defect and whether factual circumstances exist whereby the landlord should have known of the defective condition.
 {¶ 30} In further arguing that appellees should have known about the defective staircase, appellants note that Wickline stated in his affidavit, "Kitchen would have known of the improper repair, if he adequately inspected the staircase[.]" However, appellants' contention ignores evidence that Kitchen did walk through the Fergus Road residence before renting it to appellants, and Kitchen did not notice a problem with the staircase. While Kitchen admitted that he is not a professional inspector, we reiterate that R.C. 5321.04(A)(2) imposed no duty on Kitchen to have the staircase professionally inspected, and we acknowledge Kitchen's testimony verifying his ability to "look at properties and make necessary repairs[.]" (Kitchen Depo. at 39.) Thus, given that Kitchen noticed no defect in the staircase during his above-noted inspection, and given *Page 13 
that appellants provided appellees no notice of any defect in the staircase prior to the February 2004 accident, we conclude that the evidence failed to establish that appellees knew or should have known about a defect in the staircase prior to the accident.
 {¶ 31} Therefore, based on the above, we find that the record failed to establish a genuine issue of material fact that appellees knew or should have known about a defect in the staircase prior to the February 2004 accident. As such, appellees' R.C. 5321.04(A)(2) duty to repair and "keep the premises in a fit and habitable condition" did not trigger here, and appellees were entitled to a judgment as a matter of law. Accordingly, we conclude that the trial court did not err in granting summary judgment in favor of appellees, and we overrule appellants' second, third, and fourth assignments of error.
 {¶ 32} In summary, we dismiss appellants' first assignment of error, and we overrule appellants' second, third, and fourth assignments of error. Having so concluded, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 PETREE and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1